FLORENCE MINER, Appellee, v. LOVILIA INDEPENDENT SCHOOL DISTRICT, Appellant.

No. 40688.

974

FEBRUARY 10, 1931.

REHEARING DENIED JUNE 20, 1931.

Miller & Everett, for appellant.

J. A. Devitt and Anderson & Perry, for appellee.

EVANS, J.—The contract sued upon was entered into on April 3, 1929, and covered the period of one school year, beginning in September. The contract was as follows:

"_____(Perforated Line) _____

"State of Iowa Teacher's Contract

"This Agreement, entered into by and between the teacher whose name is subscribed hereto and the Board of Directors of the Lovilia Independent School District of Lovilia, State of Iowa,

"Witnesseth: That in consideration of Eighty-five and no-100 Dollars per school month, the same to be paid at the end

of each month, the aforesaid teacher hereby agrees to well and faithfully perform the duties of teacher in said District according to law and the rules legally established for the government thereof, to faithfully instruct and impartially govern all pupils who may attend said school; to keep a daily record and prepare all reports as required by the Board of Directors; and to exercise due diligence in the preservation of *all* property belonging to the District, such as school house, furniture, flag, apparatus and such other property as may reasonably come within the limits of such supervision for a term of 36 weeks, commencing on the 3rd day of September, 1929.

"And it is Further Agreed:

"(a) That said teacher is not at this date under contract with any other school district.

"(b) That said teacher will register a valid certificate according to law with County Superintendent before any part of salary is drawn.

"In consideration of said services, the President of the Board, in behalf of the said District, hereby agrees that the school house and other buildings shall be kept in good repair and in proper condition for the maintenance of the comfort and health of the teacher and pupils; that the school shall be provided with a suitable flag and flag staff in compliance with School Laws of Iowa; and that said teacher shall be provided with fuel, furniture, school records, apparatus and such other fixtures and supplies as are necessary for the best interests of the school.

"Provided: That in case the certificate of said teacher shall be legally revoked, or shall expire during the term of school designated by this contract, or the teacher be legally dismissed by the Board of Directors, then said teacher shall not be entitled to compensation after said dismissal, revocation or expiration of such certificate, provided further, that the wages of said teacher for the last month of the school term shall not be paid unless said teacher shall have made the report for the school term as required by law.

"(c) That either party to this contract on 20 days' written notice to the other may terminate this contract. Also that this teacher shall, during the school year give her full working time to the said school district, and do no other work. It is further

agreed that should the school be closed by an unavoidable cause, said teacher agrees to deduct the lost time from her salary, or make up said lost time later.

"In Testimony Whereof, we have hereunto subscribed our names this 3rd day of April, 1929.

"(Duly signed)"

On the upper margin of this written contract, and above the perforated line, indicated herein, was the following notation made by the secretary for his own convenience: "5th Grade". The defendant admitted the contract, as written, and denied the breach thereof on the part of the defendant and averred a breach on the part of the plaintiff. It further pleaded, as a defense, that after the refusal of the plaintiff to teach the 4th grade, the contract sued on was duly terminated by the service of 20 days' notice strictly in accord with the terms and provisions of the contract. The plaintiff pleaded in reply that the contractual provision under which the defendant purported to cancel the contract, was illegal and void and against public policy.

We find in the record no material dispute of fact as distinguished from questions of law. The plaintiff put in evidence certain collateral facts purporting to be in aid of the written contract sued on. It was made to appear that for the preceding three years the plaintiff, pursuant to contract, had taught the 5th grade of the defendant school; that in March 1929 a general resolution was voted by the school board re-electing all grade teachers. This was done without purporting to assign any one of them to any particular school.

On the first day of the school term, September 9, the plaintiff appeared and was advised by the Superintendent of her assignment to the 4th grade. The reason for this assignment was that the 5th and 6th grades had been consolidated because of the diminution of attendance therein. The plaintiff refused to accept the assignment to the 4th grade and contended that her contract entitled her to teach the 5th grade. The district had employed no other teacher for the 4th grade. Upon the refusal of the plaintiff to teach therein a so-called supply teacher was employed from day to day. The place was kept open for the plaintiff until September 13, when the defendant-district caused to be served upon the plaintiff a notice of termination of the

contract pursuant to the terms thereof. Two prominent issues are presented:

1. Was it the plaintiff or the defendant that breached the contract?

2. Was the provision of the contract pursuant to which the same was terminated by the defendant, illegal and void?

The attitude of the plaintiff is indicated by her following testimony:

"Had the Board called me to talk to them or talk with them about this condition before school started, I probably would have gladly accepted the fourth grade and that would have been all there would have been to it, but as it was, when I went down to talk to Mr. Paule two days after school started about the condition of things, and I asked him if he didn't think it would have been better to call a Board meeting and call me and talk this contract over before school started, he gave me to understand that he didn't have to; that he didn't have to recognize me at all."

Upon the state of the record, we are disposed to give consideration first to the second question.

The contract contained the following proviso:

"That either party to this contract on 20 days' written notice to the other may terminate this contract."

The only avoidance of the defense predicated hereon is the invalidity of this proviso. If it be valid then concededly the plaintiff must fail. The argument for the plaintiff at this point is that such proviso is contrary to public policy and inconsistent with the statute. This proposition must be reduced to the single one that it is violative of, or inconsistent with, the statute. Unless it be so, it cannot be void as against public policy. If it now be deemed against public policy, it is only because it is violative of the statute. The specific claim is that the proviso is violative of Sections 4229 and 4237 of the present Code. These sections are as follows:

"4229. *Contracts with teachers.* Contracts with teachers must be in writing, and shall state the length of time the school is to be taught, the compensation per week of five days, or month of four weeks, and that the same shall be invalid if the teacher

is under contract with another board of directors in the state of Iowa to teach covering the same period of time, until such contract shall have been released, *and such other matters as may be agreed upon,* which may include employment for a term not exceeding the ensuing school year, except as otherwise authorized, and payment by the calendar or school month, signed by the president and teacher, and shall be filed with the secretary before the teacher enters upon performance of the contract."

"4237. *Discharge of teacher.* The board may, by a majority vote, discharge any teacher for incompetency, inattention to duty, partiality, or any good cause, after a full and fair investigation made at a meeting of the board held for that purpose, at which the teacher shall be permitted to be present and make defense, allowing him a reasonable time therefor."

It is said to be violative of Section 4229 because such section requires the written contract to state "*the length of time* the school is to be taught." It will be noted that this section is affirmatively mandatory rather than prohibitive. It requires that the contract whatever it be, shall be in writing. It specifies certain specific subjects to be covered therein. It imposes no disability upon the contracting parties except that the term of service shall not exceed one year. Subject to this single disability, the right of contract, as between the contracting parties, is in no manner abridged. It is argued that this statute was enacted for the protection of the teacher. There is quite as much reason for saying that it was enacted primarily for protecting the school district. Prior to the enactment of this particular feature of the statute, there existed in many parts of the state quite a notorious and nefarious practice on the part of outgoing school boards whereby teachers selected by the outgoing board were employed for a term of years and this was done for the purpose of circumventing the incoming school board in their legitimate selection of teachers during the terms of their own incumbency. The single disability contained in this section was effective to stop such practice. In all other respects the contents of the contract are to be determined in writing by the mutual agreement of the contracting parties. This fact is emphasized by the express provision contained therein: "and such other matters as may be agreed upon". Turning now to Section 4237, we find that it provides the method of discharging a teacher

for cause. This statute is applicable to every case of teacher's employment even though the teacher had not consented thereto in his contract.

These two sections must be read together. Neither of them should be strained or emphasized to the impairment of any provision of the other. Nor should either of them be interpreted so as to eliminate any of its own provisions. The interpretation contended for by the plaintiff would require the contracting parties to fix upon a definite and invariable time of service and would deny to them the power of voluntary qualification upon any contingency. If their power were to be so restricted in the making of the contract, it would logically follow that they could have no power of voluntary modification or rescission *after* the contract was made. And yet the very converse of this is clearly implied by the express language of 4229. We refer here to the following statutory language:—"until such contract shall have been *released.*" This statute requires that a contract shall state its own invalidity if it encroach upon an existing contract previously made. This disability continues until the teacher obtains a *release* from her prior contract. The clear implication of this language is that the teacher may voluntarily ask for, or tender, a release and that the school board may voluntarily grant it. Here then is a clear exercise of the power of rescission under the very terms of Section 4229. This power of voluntary rescission can be exercised at any time either before performance or in the course of performance. The contracting parties have therefore the power of modification of the contract after the making of it. If they may voluntarily abridge "the length of time" after the making of the contract, they necessarily had the same power in the making of the contract. Under the statute they could have made the length of term as brief as they chose. They were subject to no minimum, but to a maximum only. If they had the power to agree upon any length of time subject only to a maximum, and if after entering into the contract they still have the power of voluntary modification and rescission, how can it be said that they had no power to incorporate voluntarily into the contract itself, the methods and contingencies of a future rescission at the will of either party. If they were not under disability after making the contract, to modify or rescind the same voluntarily, then of logical necessity they had equal

power when they made the contract. In other words, if *after* making the contract they could voluntarily rescind it, such measure of their power is necessarily an index of its scope in the *making* of the contract.

Plaintiff contends that the procedure in Section 4237 is exclusive. By its terms however it is exclusive only as compulsory procedure against the teacher where the specified causes exist. Nor does this section any more than 4229 purport to impose any disability upon the school board to contract for the right of termination upon notice. We have no occasion to discuss this question as a matter of first impression. We are committed to the principle involved that such a contractual provision is within the purview of the board's capacity to contract. Black v. Consolidated School District, 206 Iowa 1386. That case involved the construction of Sections 4182 and 4183. These sections relate to the employment of a driver for the school bus. These two sections are the counter-part of sections 4229 and 4237,— section 4182 being the counter-part of section 4229. Section 4182 is as follows:

"4182. *Contracts for transportation—rules.* The school board of any school corporation maintaining a consolidated school shall contract with as many suitable persons as it deems necessary for the transportation of children of school age to and from school. *Such contract shall be in writing and shall state the route, the length of time contracted for,* the compensation to be allowed per week of five school days, or per month of four school weeks, and may provide that two weeks' salary be retained by the board pending full compliance therewith by the party contracted with, and shall always provide that any party or parties to said contract, and every person in charge of a vehicle conveying children to and from school, shall be at all times subject to any rules said board shall adopt for the protection of the children, or to govern the conduct of the person in charge of said conveyance.''

The contract entered into in the cited case contained a like proviso as that in the case at bar. Section 4183 provides the grounds for discharge of the driver. It was urged in that case by the plaintiff that section 4183 was the exclusive remedy as against the driver and that the proviso under consideration was

in excess of the power of the school board. We held expressly to the contrary. In that case we said:

"The contract in question respected provisions contemplated by the Statute. Had it stopped at this point, the contention of appellant would merit consideration. That is to say, he might predicate his proposition on the fact that the defendant would be compelled to show cause for the discharge of plaintiff. This matter was voluntarily waived by the plaintiff when he signed the contract in question. * * * It may be conceded that the statute that authorized the .creation of the contract in suit may be construed as a part of the contract, but it is also a well recognized rule that a statutory provision made for the benefit of a party to a contract may be waived. It is clear that·the instant plaintiff could and did waive any right to be confronted with a formal charge as ground for a dismissal, and his right to have a hearing on said charge or accusation. The board of directors exercised its right to terminate the contract, and, so far as the record discloses, *sine causa*. This right was embodied in the contract itself. We view the stipulated reserved right as a valid and effective part of the contract, and in the exercise of the reserved right by the board, no liability was incurred on its part."

The plaintiff relies upon authority from other states,— Arkansas and New York. In neither of them does it appear that the statute construed was substantially like ours. Indeed it appears in the New York case that the tenure of office of a teacher is neither created by, nor dependent upon, a contract with the school board. In that State the statute seems to have created a status for the school teacher, which deprives the school board of any contractual control over the tenure. In Public School District v. Holson, 252 Pac. (Ariz.) 509, the Supreme Court of Arizona said:

"We have carefully examined the several cases cited by counsel for both sides, but in each of such cases the statutes involved were so different from ours as to make the conclusions thereon of little aid to us in construing our own. We therefore do not undertake to analyze or distinguish such cases, but choose, rather, to place our decision upon what we conceive to be a proper construction of our own statutes."

We are occupying the same position in the case at bar as the Arizona court did in that case. Even if the statutes were identical in form, we could not avoid the responsibility of construing our own statute.

Unless we should deem it necessary to overrule what we said in the Black case, it is binding upon us as a precedent in principle.

We hold that the proviso under consideration was valid. Being valid it becomes controlling of the case.

II. The other issue in the case presents an interesting feature. The plaintiff sued at law upon her written contract. It contained no provision which assigned her to teach the 5th grade. In aid of her written contract the plaintiff relies upon the following items of extrinsic evidence: (1) The notation of the secretary upon the margin of the contract; (2) the fact that she had taught the 5th grade for the three years last preceding under successive contracts each of which specifically assigned her to such 5th grade; (3) the fact that the school board at their March meeting purported to *re-elect* the grade teachers.

Could she qualify the written contract, thus relied on, by extrinsic matters and circumstances and thus give to the contract a different meaning from that which it carried on its face? If equities were involved, and if equitable relief in the way of reformation were prayed, the circumstances relied on would carry their appropriate significance. But in an action at law upon a written contract, the rights of the parties were necessarily determined by the actual terms of the contract itself. The mere resolution of the Board purporting to re-elect the teachers conferred upon the plaintiff no actionable right. This resolution was within the control of the Board and subject to re-consideration at all times until the written contract was actually entered into and signed by the plaintiff and by the president of the board. Her actionable right arose under her written contract and not otherwise. If the contract were ambiguous, extrinsic evidence might aid in its interpretation. Was it ambiguous? In view of our conclusion on the first division hereof, we are not disposed to pursue the inquiry.

For the reason indicated, the judgment below is reversed.

FAVILLE, C. J., and ALBERT and GRIMM, JJ., concur.

MORLING, STEVENS, and DE GRAFF, JJ., concur in the result.

KINDIG, J., dissents.

WAGNER, J., takes no part.

KINDIG, J. (dissenting)—Not being able to agree with the majority opinion in this case, I respectfully dissent.

The basis of the majority opinion is that the contract between the school board and appellee contained an optional provision authorizing its cancellation at any time during the school year, providing a twenty-day notice be given. Therefore, the majority conclude that the appellee is not entitled to the damages demanded because, in accordance with that optional provision, appellant cancelled the contract by giving the required notice. Provision (c) of the teacher's contract contains the following: "And it is further agreed: * * * That either party to this contract, on twenty days' written notice to the other, may terminate this contract."

Were such optional agreement an authorized and valid part of the contract, then appellee could not recover. Is the provision a legal limitation upon appellee's rights within the statutory agreement? Section 4229 of the 1927 Code provides:

"Contracts with teachers must be in writing, and shall state the length of time the school is to be taught, the compensation per week of five days, or month of four weeks, and that the same shall be invalid if the teacher is under contract with another board of directors in the state of Iowa to teach covering the same period of time, until such contract shall have been released, and such other matters as may be agreed upon, which may include employment for a term not exceeding the ensuing school year, except as otherwise authorized, and payment by the calendar or school month, signed by the president and teacher, and shall be filed with the secretary before the teacher enters upon performance of the contract."

Because of the clause "and such other matters as may be agreed upon", appellant contends that the statute authorized the board and the teacher to adopt the optional provision for the forfeiture above named. Basis for this contention, the majority say may be found in Black v. Consolidated Independent School District, 206 Iowa 1386. In the Black case there was

involved not a teacher's contract, but an agreement with a driver for transportation. Contained in the contract was the following provision:

" 'The board of directors reserves the right to terminate this contract at any time.' " ·

This court concluded that the provision was valid, and that by signing the agreement embodying it, the driver waived his right to serve for a definite term. Clearly, however, the statutes which control a school bus driver and those which relate to a school teacher are quite different in their provisions. For instance Section 4237 of the 1927 Code declares:

"The board may, by a majority vote, discharge any teacher for incompetency, inattention to duty, partiality, or any good cause, after a full and fair investigation made at a meeting of the board held for that purpose, at which the teacher shall be permitted to be present and make defense, allowing him a reasonable time therefor."

Such statutory provision, of course, does not apply to the bus driver. Public policy prompted the legislature to enact the aforesaid section concerning the discharge of a teacher only after charges preferred and the hearing had.

Consistent with section 4229, supra, as before indicated, the appellee's agreement fixed a definite term. That contractual provision concerning the term for teaching is founded upon the following clause in section 4229, supra:

"Contracts with teachers must be in writing, and shall state the length of time the school is to be taught."

Complying with that statutory mandate, the appellant and appellee specified in their contract, as before said, that the term for teaching should be thirty-six weeks. Both the teacher and the school district were interested in knowing the length of time. After the school year once commenced, the teacher would have difficulty in finding a new position, and the district likely might encounter embarrassment in locating another teacher. So the statutory provision was for the protection of both the teacher and the district. Carefully guarding the district and the teacher in this regard, the legislature enacted Section 4237, above-

quoted. When the board, as here, has hired the teacher for a definite period, she cannot be discharged except as provided in that section. Said section becomes a part of the contract. Chehock v. Independent School District, 210 Iowa 258. While discussing a similar subject, the Supreme Court of Arizona, in Public School District No. 11 v. Holson, 252 Pac. (Ariz.) 509, reading on page 511, said:

"Paragraph 2806, Civil Code (of Arizona), is found under the heading of 'Teachers' and is as follows:

" 'In case of the dismissal of any teacher before the expiration of any contract entered into between such teacher and the board of trustees, for alleged unfitness or incompetence, appeal may be had to the county superintendent.'

"This language does not directly confer the power of dismissal upon the trustees, but recognizes the existence of such power when the teacher is unfit or incompetent, but in no other case. If the teacher is fit and competent, the power of dismissal does not exist, as the expression of the one excludes the other. The legislature in naming the grounds upon which a dismissal could be made by the trustees, especially where such grounds are broad enough to cover almost every kind of disqualification imaginable, must be presumed to have intended such grounds to be exclusive and a prohibition against the exercise of the power of dismissal whimsically, arbitrarily, or capriciously, or upon a mere desire for a change. * * *

"When the privilege of teaching is so carefully hedged about, the recipient of credentials, who in his work has not shown himself unfit or incompetent, should not be subjected, as to his tenure of employment, to the mere pleasure of the employing agents, and we do not believe that the Legislature intended that he should be. We are of the opinion that the contract of employment fixed plaintiff's tenure for a term of ten months, and that the provision of the contract attempting to authorize the trustees to dismiss her at pleasure is contrary to, and violative of, the spirit and policy of the law as declared by the Legislature, and that the right to dismiss a teacher and thereby terminate her contract of employment exists only when she is shown, after an opportunity to be heard, to be unfit or incompetent to perform her contract."

Once more the Arizona Supreme Court considered the same subject in Sarle v. School District Number 27 of Pima County, 255 Pac. (Ariz.) 994. Therein that court declared:

"The question of the power and right of boards of trustees to insert in a contract employing a teacher a stipulation that the contract might be terminated upon notice was later, in January, 1927, in Public School District No. 11 of Maricopa County v. Holson, 252 Pac. 509, passed upon by this court. In that case we held that such provision was invalid, and that the trustees of the school district could not dismiss the teacher at pleasure, or arbitrarily, or capriciously, and that the effort to write such power into the contract was violative of the spirit and policy of the law as declared by the Legislature. It was said in that case that the Legislature had enumerated the causes for which a teacher might be dismissed, and that the right of dismissal was limited to those causes."

As in Arizona, so in Iowa the legislature determined the causes for which a teacher could be dismissed. See Section 4237, supra. Likewise, the Iowa legislature provided that before such dismissal it was necessary that charges be filed and an opportunity for hearing given. Consequently that method for discharging a teacher is exclusive. In the case at bar, however, no such charges were filed against, or opportunity for hearing given, the appellee.

But the majority attempts to distinguish between the Arizona statute, discussed in the foregoing cases, and the Iowa legislation. The distinction pointed out by them is that the Arizona legislation does not contain a clause similar to that embraced in Section 4229, supra, to wit: "Contracts with teachers must be in writing, and shall state the length of time the school is to be taught, * * * *and such other matters as may be agreed upon*" (the italics are ours). This italicized provision, the majority maintains, acts as a saving clause to distinguish the Iowa law from that discussed in the Arizona cases. If there is any material difference between the two statutes it must be found in the italicized provision. Obviously, however, the clause italicized above in section 4229 of the Iowa statute does not authorize the school board and the teacher to limit or overcome the express provision in the first part of the same section. Ref-

erence is made to the following: "Contracts with teachers must be in writing, and shall state *the length of time the school is to be taught.*" (The italics are ours). That statutory mandate is definite and positive. Surely, then, the permissive clause to which the majority refers cannot overcome and be inconsistent with the first specific and affirmative requirement. "The length of time the school is to be taught" must be definite and certain, and that is true whether the term for which the teacher may be hired shall be long or short. Undoubtedly the general clause in the same section of the statute, to wit, "and such other matters as may be agreed upon", may include many and various subjects, but whatever is embraced therein cannot include a provision inconsistent with the previous positive declaration that the contract "shall state the length of time the school is to be taught."

Section 4229, supra, itself interprets in a general way what may be included within the clause "and such other matters as may be agreed upon". To illustrate, the statute provides "and such other matters as may be agreed upon, *which may include employment for a term not exceeding the ensuing school year* * * *.*" (The italics are ours). The thought expressed by the statute itself, as an illustration of its own interpretation, is that the teacher's term of employment must be fixed and definite as stated in the first part of the section, wherein it provides "contracts with teachers must be in writing, and shall state the length of time the school is to be taught." By reaching their conclusion that the phrase "and such other matters as may be agreed upon" may include an indefinite and unfixed time of employment the majority nullify the express wish of the legislature, as clearly outlined in the statute. If, as in the contract set forth in the majority opinion, the term for which the teacher is employed can be terminated at the option of either the teacher or the district, the statutory mandate has been nullified. The statute requires that contracts with teachers must be in writing and shall state the length of time the school is to be taught. Under the optional contract approved by the majority, no one knows "the length of time the school is to be taught". Such time may be a year, six months, thirty, or even twenty, days. When the school year commences, the district does not know that it is to have a teacher for the entire year, although the statute requires

that the contract of employment shall state "the length of time the school is to be taught." By exercising the option at any time during the school year, the teacher could interrupt the progress of the school by refusing to teach farther, and the grade would have to be discontinued if the school district was not fortunate enough to secure another teacher at the late time to supply the vacancy. On the other hand, under such optional agreement, no teacher could feel that she had employment for the school year, but regardless of Section 4237, she could be discharged without cause at the whim and caprice of a school board. To avoid those results, section 4237 was adopted by the legislature, and section 4229 was made to read: "Contracts with teachers must be in writing, and shall state the length of time the school is to be taught."

A suggestion is made by the majority that section 4229 of the 1927 Code provides for a rescission, under the following language: "And that the same (the contract with the teacher) shall be invalid if the teacher is under contract with another board of directors in the state of Iowa to teach covering the same period of time, until such contract shall have been released." Manifestly that position is not sound. There is a vast difference between the statutory requirement for a valid contract fixing the time the school is to be taught, and a provision that there cannot be a second contract of that kind until the first is released. An optional contract permitted by the majority would leave the school district and the teacher without a definite assured period during which the school is to be taught. It was unquestionably upon the basis of public policy that the legislature sought to avoid that result. Schools are essential, but schools without teachers for the ordinary term, would not meet the required standing. Therefore, the statutory requirement for the definite period was enacted. On the other hand, it is well known that the teaching profession has its regularity of proceedings to obtain employment. These teachers are hired at the usual time each year, and after that date few, if any, schools are available to the unemployed teachers. Because of the welfare of the teacher as well as the school, the statutory provisions requiring the definite time for teaching were demanded in each contract, as before said. Hence the optional provision is not permissive under the statute. However, when a

fixed time is assured by a positive contract, there might not be any violation of the statutory rule to permit a voluntary rescission of the teaching contract in the future. If the time for teaching is fixed and certain, it will be known then that the schools are to run. The school district would not consent to a release of the teacher under her contract unless it knew that another teacher was available to continue the school. Likewise, the teacher would not voluntarily consent to a rescission of her contract unless she knew that another school was available to her. Consequently, a subsequent voluntary rescission is quite different from the execution of an original contract permitting optional termination. In the one case, the school district is assured the services of a teacher, while in the other it is not. Again, in the one case the teacher is guaranteed a position, while in the other she is not. So it is apparent that the authority to voluntarily rescind an existing agreement would be no basis under the statute for originally entering into a contract indefinite as to the time for teaching. The statutory mandates concerning the fixed period for teaching furnish the distinction. All this discussion is made upon the assumption rather than the conclusion that the subsequent rescission is permissible under the statute.

Such being the law, then, the district court was justified in holding that the appellant could not discharge appellee during the term of her contract, except as provided in section 4237 of said Code.