Derwood G. KEITH, Appellant,

v.

The COMMUNITY SCHOOL DISTRICT OF WILTON IN THE COUNTIES OF CEDAR AND MUSCATINE, Iowa, Appellee.

No. 59016.

Supreme Court of Iowa.

Jan. 18, 1978.

James L. Sayre, of Dreher, Wilson, Adams & Jensen, Des Moines and T. L. Hinman, Iowa City, for appellant.

Walter A. Newport, Jr., of Newport, Buzzell, Liebbe & Fortini, Davenport, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON, and HARRIS, JJ.

MASON, Justice.

Derwood G. Keith, plaintiff teacher, appeals the trial court's order dismissing his petition in a law action challenging the action of the defendant school board in refusing to renew his employment contract.

We narrate some of the facts giving rise to this lawsuit.

May 8, 1974, the Community School District of Wilton in the counties of Cedar and Muscatine by its board of directors voted to discontinue the teaching contract of Keith. June 12 Keith filed a petition in the Muscatine District Court in four divisions seeking (1) declaratory judgment that his contract was still in force and he was, therefore, entitled to reinstatement, (2) damages for breach of contract, (3) a writ of certiorari to compel the school district to provide him with various documents and records, (4) declaratory judgment that section 279.13, The Code, 1973, was unconstitutional because it deprived him of procedural due process under Amendment 14 of the Constitution of the United States.

At the close of plaintiff's evidence he sought and was granted leave to amend the fourth division of his petition whereby he alleged section 279.13 was unconstitutional because it deprived him of property and liberty without due process.

Prior to the action of the board of directors, Keith had taught vocational agriculture for 21 years in the Wilton school system. There is nothing of record to indicate any problems with Keith's performance as a teacher until after the 1967–68 school year. In that year Keith served as president of the Wilton Education Association and was involved in heated and argumentative contract negotiations with the school board. Between that year and 1974 when this action arose, two other proceedings had been commenced by Wilton school boards of different membership to consider termination of Keith's teaching contract. Both proceedings had ended in compromise settlements.

The last compromise included an addition to Keith's contract whereby he agreed to meet at least once a month with his principal, Mr. Williams, and the superintendent and agreed to adhere to board policy. This procedure was followed during the 1973–74 school year. It resulted in discussions about the administrators' criticisms as well as communications to Keith of minor criticisms expressed by members of the school board. The principal testified he considered none of these conferences to have been unfavorable to Keith.

Mr. Williams testified that pursuant to the Policies and Procedures of the Board of Education he made an evaluation of Keith. This document dated March 11, 1974, was the first evaluation made of Keith's work and it was favorable to him. After Mr. Williams had apparently completed his evaluations of his staff, he made a blanket recommendation to the school board that all his teachers be continued under contract for the next year.

March 20 a meeting was held between Keith, Williams and four of the five board members. This meeting was called so board members could make criticisms and suggestions to Keith based on their investigations of the vocational agriculture programs of two other school systems. Nothing was said at this meeting about the possibility of terminating Keith's contract. After the meeting, Keith and Williams spoke and expressed to each other their opinions the meeting had been a step toward better understanding and communication between the board and Keith.

A special meeting of the school board was held March 25. The notice of this meeting which had been published in the local newspaper did not include Keith's name but declared the purpose of the meeting was to consider personnel problems. At the meeting two patrons of the school district spoke before the board. They voiced dissatisfaction with the vocational agriculture program as it had been conducted in recent years.

Immediately thereafter and without any discussion among its members, the board voted to send a letter to Keith indicating its intention to terminate his teaching contract

at the end of the school year. At no time prior to March 20 did the board's minutes reflect any discussion of Keith and his alleged problems. In a stipulation entered into by the parties it was agreed the board had discussed Keith's problems several times at different meetings but these discussions had not been entered into the minutes.

Keith received the letter March 28 and testified at trial he had no prior knowledge the board was considering termination of his contract. Mr. Williams did not expect such action by the board because he felt the March 20 meeting had satisfied the board substantial changes would be made in Keith's courses.

March 29 Keith requested a private conference with the board and a written statement of specific reasons the board was considering for termination of his contract. The board set the private conference for April 5 and sent a statement of reasons to Keith. This statement was formulated by the board's attorney after he conducted separate interviews with each board member. A representative sample of the reasons is as follows:

"I

"Members of the Board feel that the students in your Vocational classes who do not go on to a college or a university program after graduating from high school should be as well equipped for obtaining employment after graduation as the Community School District of Wilton can equip them. They feel that these students should be receiving far more training in your vocational classes than you are giving them. Some specific examples of such failures and shortcomings are as follows:

"A. Board members have visited the vocational departments in the schools of other comparable communities and have learned that their accomplishments and lines of instructions are far superior to yours.

"B. You have failed to give your students sufficient practical projects in their shop courses to develop their vocational skills. For example:

"1. You made a request that your vocational shop be equipped with welding tables and partitions between the welding tables. You were told that if you would submit a bill of particulars on the material needed for these items they would be furnished you. That the actual construction of the welding tables and partitions should be done by your shop students since such activities would develop their skills as well as demonstrate the kind of work it takes for planning, working out bills of materials, visualizing the final product, and working from the beginning in physically creating the items to be built through to the final completion of the projects. However, your students were never asked to formulate such plans. No bills of particulars for the materials you needed were ever presented. No welding tables were ever made by your students even though you already had the welding and other tools you needed to construct them. No partitions were built by your students. The entire project, loaded with great potential for developing skills in your students, totally failed to get off the ground.

"2. Two years ago (approximately) you were asked to have your shop students make bicycle racks for use at the school by students who rode bicycles to school. It was understood that the necessary materials would be furnished when you advised what materials would be needed. Your classes have never made the bicycle racks. You have never submitted a list of the materials you would need for such bicycle racks. The project has simply fallen by the wayside.

"C. * * *

"D. * * *

"E. Other vocational instructors have their students build shops and buildings, do all the painting, and wire or rewire the simpler electrical conduits. * * * Your standards along these lines fall far below the standards of such other vocational instructors and the results you obtain for your students are accordingly far less help-

ful in preparing your students for their later careers. ."

"II * * *

"III

"The Board feels that you fail to motivate your students. In other community school districts the teachers have an enthusiasm and an interest that is reflected in the students of the districts. * * *

"IV

"The Board feels that your work as a teacher is so ineffective that the parents and other adults in the school district can detect it in the work produced by your students. As a result they are critical of the efforts of the school administration in failing to provide a teacher capable of developing the young people who take your vocational agriculture courses as those young people should be developed, * *. In other words, enough of the adults here feel that the students of the district should have a different vocational agriculture teacher than the one we have that the Board feels it to be the duty of its members to replace you by one who can more nearly serve the needs of the students.

"V

"The Board feels that the morale and spirit within this school district will be substantially improved if a new teacher takes over the work you have been doing. It casts no reflection whatsoever on your personal life and has no quarrel whatsoever with that. * * *."

At the April 5 private conference Keith was represented by his attorney and an attorney for the Iowa State Education Association. They were permitted to make and did make statements which supported Keith and which were aimed at the reasons the board had given for its termination action.

At the April 8 board meeting, the board voted to terminate Keith's contract and thereafter followed the procedures set forth in section 279.13, The Code, 1973, for notifying Keith of its decision. The procedures as followed prior to the April 8 meeting and subsequent thereto are as follows:

" * * * On or before April 15, of each year * * * the board may by a majority vote of the elected membership of the board, cause said contract to be terminated by written notification of termination, by a certified letter mailed to the teacher not later than the tenth day of April; provided, however, that at least ten days prior to mailing of any notice of termination the board or its agent shall inform the teacher in writing that (1) the board is considering termination of said contract and that (2) the teacher shall have the right to a private conference with the board if the teacher files a request therefor with the president or secretary of the board within five days; and if within five days after receipt by the teacher of such written information the teacher files with the president or secretary of the board a written request for a conference and a written statement of specific reasons for considering termination, the board shall, before any notice of termination is mailed, give the teacher written notice of the time and place of such conference and at the request of the teacher, a written statement of specific reasons for considering termination, and shall hold a private conference between the board and teacher and his representative if the teacher appears at such time and place. * * * In event of such termination, it shall take effect at the close of the school year in which the contract is terminated by either of said methods. The teacher shall have the right to protest the action of the board, and to a hearing thereon, * * * in which event the board shall hold a public hearing on such protest at the next regular meeting of the board, or at a special meeting * * *. Upon the conclusion of the hearing the board shall determine the question of continuance or discontinuance of the contract by a roll call vote entered in the minutes of the board, and the action of the board shall be final." Section 279.13, The Code, 1973.

Pursuant to section 279.13 a protest to the board's action and a request for a public hearing was filed by Keith. The board scheduled the hearing for May 8.

At that hearing Keith was represented by his attorneys and the Iowa State Education Association attorney and others. Because of the efforts of the Future Farmers with which Keith had worked, 300 people were present at the meeting. Of the forty people who spoke at the meeting approximately six spoke against Keith's retention. No evidence was produced at this hearing but at least two board members made comments. Keith and his representatives made such statements as they wished. At the conclusion of the meeting, the board voted unanimously to terminate Keith's contract.

Keith later filed his petition in the case before us. Prior to trial a stipulation was entered into by the parties. Those sections of the stipulation not previously included herein are as follows:

"1. * * *

"2. It is stipulated that the Superintendent of the Wilton School District made no written or oral recommendations to the board of directors relative to renewal or nonrenewal of the contract with plaintiff Derwood G. Keith during the school year 1973–74.

"3. * * *

"4. With reference to the policies and procedures manual of the board of education, which is Defendants' Exhibit 1, it is stipulated that this manual was prepared by the superintendent of the defendant school district and was passed out to all certificated employees of the school district with the full knowledge of the board of education at the beginning of the school year 1973–74 and prior thereto, and that it was printed or published at the expense of the school district or on its equipment.

"5. It is stipulated and agreed that the proceedings commencing March 25, 1974 and thereafter relative to the nonrenewal of Derwood G. Keith's teaching contract were instituted and carried forward solely on the board's own motion.

"6. It is stipulated and agreed that the times and manner of service or mailing of notices pursuant to Section 279.13 are not challenged in this cause by the plaintiff.

"7. * * * [Keith was at all times ready and willing to perform his teaching duties].

"8. * * * [Keith and his wife started a business on March 1, 1975 and they have made no profits therefrom].

"9. * * *

"10. * * *."

At trial much testimony centered around three sections of the pamphlet entitled "Policies and Procedures of the Board of Education," which the board had admitted was prepared and passed out with its knowledge. Those three sections in pertinent part are as follows:

"*CODE 301 SUPERINTENDENT*

"The superintendent * * * shall have the direct supervision of all employees connected with the Community Schools of Wilton.

" * * * *

"With the approval of the Board, he shall assign all principals, teachers, and other district personnel to their positions in the school and make such transfers or other changes as, in his judgment, are necessary.

"*CODE 401 STATEMENT OF GUIDING PRINCIPLES*

"The goal of the Board of Education is to provide an educational program of the highest quality possible. * * *

"It shall therefore be the policy of the Board of Education to hire and retain the highest calibre of professional and supporting personnel. * * *

"*CODE 427 DISMISSAL*

"*Teacher to be Counseled.* The principal of the school has the responsibility for visiting the classrooms of all teachers assigned to his building. Any deficiencies that are observed shall be called to the attention of the teacher and remedial measures suggested to correct same. If the deficiencies have

not been corrected after a sufficient period of time, a conference of the teacher and principal shall be arranged to discuss the implications of the matter.

"*Dismissal when Service Continues to be Unsatisfactory.* Any certificated employee whose work or conduct continues to be unsatisfactory after his deficiencies have been called to his attention, and reasonable assistance offered to correct them, shall be given an unsatisfactory rating by the principal, with written recommendation to the superintendent that the employee's contract not be renewed. The teacher is to be notified of the evaluation by the principal by February 15. The principal must present facts to substantiate the reasons for unsatisfactory evaluation. Following the conference, the administrator shall write a letter to the teacher verifying the evaluation, stating the positive efforts made to help the teacher, and his reasons for not recommending renewal of the contract. A carbon copy of this letter shall be placed in the teacher's file. Actual contract termination will follow Section 279.13 of the Iowa Code."

Also of importance at trial were the following two sections of Keith's contract:

"  *   *   *

"(7) That this contract shall be subject to the provisions of Iowa Code, § 279.13, known as the continuing contract law, *  *.

"  *   *   *

"5. It is understood that Board policy and direction from the administration shall be strictly adhered to by employee."

After trial the court made the following statement in its conclusions of law:

"  *   *   *

"*IV. Due Process Hearing Requirements Lacking.*

"This court does consider plaintiff's claim that if he does indeed have a protectable property interest, then the question of whether due process was furnished in his termination arises. It would seem that several elements of procedural due process are lacking, most importantly:

"(1) an impartial decisionmaker—since the school board was the body that instigated the termination;

"(2) an opportunity to confront and cross-examine witnesses;

"(3) a determination of the evidence produced and a statement of the evidence relied on for such determination—since the board produced no evidence or witnesses at the hearings."

The court then applied the law to the facts and found as follows:

"(1) That defendant strictly complied with the provisions of Section 279.13 as it applied to plaintiff.

"(2) That failure to comply with the Policies Manual does not give to plaintiff a property right protected by the Federal Constitution which would justify a hearing on the merits.

"(3) That the U.S. Supreme Court considers the relationship between plaintiff and defendant a matter of state concern and state law, and that Section 279.13 fulfills all constitutional requirements.

"(4) That Iowa does not have teacher tenure.

"(5) That under Section 279.13 the school board has the final decision to renew or not to renew a teacher's contract.

"It must follow that this court, therefore, has no alternative but to dismiss plaintiff's petitions and all four Divisions thereof at plaintiff's costs."

The parties' contentions present the following issues for review:

1. Did the trial court err in finding Code 427 of the board's Policies and Procedures Manual was not the only method by which the board could terminate Keith's contract?

2. Did the trial court err in finding Code 427 did not provide Keith with a property interest in termination of his contract by that method only such as is protected by Amendment 14 of the United States Constitution?

3. Did the trial court err in finding the board strictly complied with section 279.13, The Code, 1973, in terminating Keith's contract?

4. Did the trial court err in failing to find the board's actions were arbitrary, capricious and unreasonable?

5. May a school board act as prosecutor, judge and jury in a termination proceeding under section 279.13, The Code, 1973?

■ I. On appeal from a law action tried to the court, as here, review in this court is only on errors assigned and the matter is not triable de novo. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, they are binding on us and the judgment will not be disturbed on appeal.

■ However, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom is correct, nor does it apply if in arriving at a finding the trial court erred in its ruling on evidence or in other respects upon questions of law which materially affect that decision. *Whewell v. Dobson,* 227 N.W.2d 115, 117 (Iowa 1975).

While no errors are assigned as to the admission of evidence the trial court apparently believed it was acting in equity and pursuant to the equity rule it allowed in all evidence subject to objections. *O'Dell v. O'Dell,* 238 Iowa 434, 464–466, 26 N.W.2d 401, 416–417. Apparently, the trial court searched the record prior to its findings of fact and its conclusions of law and excluded that evidence to which proper objection was made. Because no errors are assigned which attack this procedure by the court we need not decide whether the trial court committed error thereby.

■ II. The board contends paragraph (7) of Keith's contract, wherein it is stated section 279.13, The Code, shall apply, was a contractual agreement between the board and Keith making that section available to the board in a termination proceeding. The board argues Code 427 is not applicable here because the principal did not instigate the termination proceedings. The board insists Code 427 was not board policy and therefore it did not have to adhere to it.

Keith agrees section 279.13 is applicable here but he insists interpretation of that section leads to the conclusion the board was bound to follow Code 427 in any termination proceeding.

Keith points out one part of section 279.-13 states the following:

"Contracts with teachers must be in writing, and shall state the length of time the school is to be taught, * * * *and such other matters as may be agreed upon,* * * *."* (Emphasis supplied).

Keith maintains the emphasized phrase of that section allows teachers and school boards to agree to methods other than those specified in later parts of section 279.13 for termination of the contractual relationship. Keith draws our attention to the following cases in support of this proposition: *Miner v. Lovilia Ind. Sch. Dist.,* 212 Iowa 973, 234 N.W. 817; *Ashby v. School Township of Liberty,* 250 Iowa 1201, 98 N.W.2d 848; and *Barnett v. Durant Community School Dist.,* 249 N.W.2d 626 (Iowa 1977).

In *Miner* this court found a school board and teacher could agree their contractual relationship could be severed by either party upon the giving of twenty days notice. As a basis for the holding this court stated:

"It is said to be violative of Section 4229 [the predecessor to section 279.13] because such section requires the written contract to state '*the length of time* the school is to be taught.' It will be noted that this section is affirmatively mandatory rather than prohibitive. * * * It imposes no disability upon the contracting parties except that the term of service shall not exceed one year. Subject to this single disability, the right of contract, as between the contracting parties, is in no manner abridged." (Emphasis in original). *Miner,* 212 Iowa at 978, 234 N.W. at 819.

In *Ashby* this court found the school board and teacher could agree the teacher's contract would be terminated if enrollment fell below six students. This court explained its holding as follows:

"The first paragraph of section 279.13 sets out certain matters contracts with teachers shall state. The only prohibition it contains is that the contract term of employment shall not exceed the ensuing school year, except as otherwise authorized. Not only is no other disability placed upon the contracting parties but the statute expressly permits the inclusion in the contract of 'such other matters as may be agreed upon.'

" * * *

" * * * We think the authority of the *Miner* case and the others herein considered is strengthened, rather than rendered inapplicable, by the later amendments to the statute which *clearly recognize the right of the parties to terminate the contract by mutual agreement.*" (Emphasis supplied). *Ashby,* 250 Iowa at 1209–1214, 98 N.W.2d at 854–857.

In *Miner* and *Ashby* this court allowed boards and teachers to agree to changes in the protection and job security given by section 279.13 and its predecessor statute. Keith contends these changes actually narrowed the protection and security given by the section.

In the third case cited by Keith, *Barnett,* we found section 279.13 did not bar agreements between boards and teachers for tuition reimbursement for teachers. Although such reimbursement was not specifically allowed by chapter 279, we relied upon the statements previously set out from *Miner* and *Ashby* to find school boards could provide for reimbursement for teachers.

Keith contends our holding in *Barnett* can be interpreted as a holding allowing expansion of teachers' rights. Keith then argues Code 427 was an expansion of the teachers' rights in the Wilton school system and as such it should be upheld, as was the *Barnett* expansion, on the basis of *Miner* and *Ashby.* He argues this expansion was a contractual agreement between the teachers and the board by which the board agreed to use only the procedure set forth in Code 427 in terminating a teacher's contract.

Keith insists Code 427 was also a part of board policy because it was included in the Policies and Procedures Manual. From this Keith maintains by Paragraph 5 of his contract, whereby board policy is at least impliedly made a part of his contract, Code 427 became a part of his contract.

Keith then argues because Code 427 is board policy the board must adhere to it under the rule governmental agencies have a legal obligation to comply with their own rules. He cites the following cases for the rule he urges: *Yellin v. United States,* 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778; *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; and *United States v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681.

The board does not refute Keith's expansion theory. It does not refute Code 427 was a contractual agreement between the teachers and the board but, instead, contends that provision is only applicable when a principal instigates termination proceedings. It argues Code 427 is not the exclusive method of termination. It insists Code 301 allows the superintendent to instigate such proceedings. It points out Keith's own contract provided section 279.13, The Code, 1973, would be applicable. It maintains the rules of the cases cited by Keith are inapplicable here because Code 427 was not board policy.

Although these issues are hotly contested by the parties, we need not decide many of the issues argued. Hence we do not reach Keith's contention that section 279.13 allows teachers and school boards to agree to methods other than those specified in that section for termination of contractual relationship. Code 427 only applies when the principal instigates termination. Here the principal did not instigate the proceedings, and, in fact, he played no part therein. The provision in Keith's contract made section

279.13 applicable where the principal did not instigate the termination proceedings.

The trial court was correct in finding section 279.13, The Code, 1973, was available to the board for termination proceedings.

■ III. Keith contends Code 427 provided him with a property interest in termination under that section only, such as was protected by Amendment 14 of the United States Constitution. He bases this argument on the reasoning explained in division I herein and on the following cases: *Kruse v. Bd. of Directors of Lamoni Community,* 231 N.W.2d 626 (Iowa 1975); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; and *Brouillette v. Board of Dir. of Merged Area IX, Etc.,* 519 F.2d 126 (8 Cir. 1975). Because we have found Code 427 inapplicable here, we need only decide if Keith had, without Code 427, a constitutionally protected property interest in a continuing contract. This court concludes he did not have such an interest.

As we explained in *Kruse,* 231 N.W.2d at 634–635:

"Plaintiff also maintains defendants' failure to furnish the written statement of specific reasons prior to the private conference violated her federal constitutional rights. In this connection *Scheelhaase* [*Scheelhaase v. Woodbury Central Community Sch. Dist.,* 488 F.2d 237 (8 Cir. 1973)], 488 F.2d at 240 and *Courter* [*Courter v. Winfield-Mt. Union Community School Dist.,* 378 F.Supp. 1191 (S.D.Iowa 1974)], 378 F.Supp. at 1193, in dealing with the federal constitutional question recognize that under Iowa law public teachers do not enjoy tenure, rather they are hired on a year-to-year basis. *Courter* interprets *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, as declaring non-tenured school teachers do not have a constitutionally protected property interest in reemployment."

This same conclusion was reached in *Brouillette,* 519 F.2d at 127–128, where the court stated:

"In *Board of Regents v. Roth,* * * * (Citation), and *Perry v. Sindermann,* * * (Citation), the Supreme Court held that a non-tenured teacher is entitled to procedural due process upon termination only if that termination will deprive him of an interest in property or liberty. Under Iowa law, a non-tenured teacher is hired on a year to year basis. Unless affirmative action is taken to terminate employment, however, teaching contracts are automatically renewed each year. We have recently held that this procedure creates no expectation of continued reemployment and thus, no property interest requiring constitutional protection. *Scheelhaase v. Woodbury Central Community Sch. Dist.,* * * * (Citation)."

The trial court was correct; Keith had no constitutionally protected property interest in a continuing contract.

■ IV. Keith contends the trial court erred in finding the board had strictly complied with the provisions of section 279.13. He argues strict compliance means among other things that the statement of reasons given the teacher when the board follows section 279.13 must contain reasons with a basis in fact. He insists the reasons given by the board in the present case had no factual basis.

The following pronouncement in *Kruse,* 231 N.W.2d at 634, is dispositive of the question whether the reasons must have a factual basis:

"This provision [section 279.13] of the statute demands that upon the teacher's request the board must give the teacher a written statement of specific reasons for terminating the teaching contract. This court now determines that the legislative purpose of this requirement is to afford the teacher an opportunity to successfully argue his dismissal was arbitrary and capricious if he can prove that each of the stated reasons underlying his dismissal is trivial, *is wholly unsupported by a basis in fact,* or is unrelated to the educational process or to working relationships with the educational

institute or his contemplated dismissal is based upon any impermissible constitutional reasons, such as race, religion, or the assertion of rights guaranteed by law or the constitution. * * * [citing authorities]." (Emphasis supplied).

In response to Keith's assertion that the reasons given by the board had no factual basis the board maintains the record shows substantial basis in fact and if Keith did not know or understand those facts he had ample opportunity to find out what they were. The board insists Keith had ample opportunity to show it why the reasons were mistaken or the fault of some third person and had full opportunity to persuade the board it was making a mistake. The board argues the whole tenor of the conversation at the private conference attended by all board members, the superintendent, Keith, Keith's counsel and ISEA representatives was why the board was considering termination of Keith's contract. It argues further that at the public hearing everyone had a chance to ask questions or make statements.

There is substantial support in the record for the trial court's conclusion that the school district complied with the requirements of section 279.13. Keith's contention cannot be sustained.

Keith's contention the board's action was arbitrary, capricious and unreasonable is also based on his claim the written statement was without basis in fact. It follows from what we have heretofore said in this division this contention also lacks merit.

V. The next issue is whether a school board in a termination proceeding under section 279.13, The Code, 1973, may act as prosecutor, judge and jury by instigating and carrying through such proceedings on its own motions.

Keith contends the trial court erred because it found the board was not an impartial decisionmaker and yet it dismissed his petition. The board argues this was not a finding of fact or conclusion of law by the court because this portion of the court's finding begins with the words, "It would seem."

We find the board's contention without merit. It is clear the court by the quoted phrase meant to give its conclusion the strength of all of its other conclusions of law. It was merely pointing out because of its previous reasoning it did not need to resort to this finding to render its judgment. There is no question the court concluded Keith was denied an impartial decisionmaker, an opportunity to confront and cross-examine witnesses, and a determination of the evidence produced and a statement of the evidence relied on for such determination. The question then becomes whether such a finding in light of the court's judgment was error.

Keith contends it was made clear in *Brouillette* a school board, in the context of the non-renewal of a teacher's contract, must be a fair and impartial decisionmaker and must to some extent provide for confrontation and cross-examination of witnesses. The plaintiff teacher in *Brouillette* contended he was denied his constitutional rights to procedural due process (the application of this aspect of the case has already been explained in division III herein) and that the public hearing was inadequate under Iowa law because he was not sufficiently informed of the charges against him and he was denied the right to confront his accusers.

Although the court in *Brouillette* found the teacher had been sufficiently informed and was not denied the right of confrontation, it made the following pertinent remarks at 519 F.2d pages 128 and 129:

"Section 279.13 does not set forth any form for the required hearing. We have acknowledged that the statute was intended to provide non-tenured teachers with procedural due process. *Swab v. Cedar Rapids Community Sch. Dist.*, 494 F.2d 353 (8th Cir. 1974). However, this does not mean a formal trial must be held. In the absence of more specific rules and regulations *or until further definition by the Iowa Supreme Court*, we deem an informal procedure which meets the minimal requirements of fair play and provides a dismissed

teacher with a reasonable opportunity to be heard compliance with the statute. Minimal requirements of due process are generally recognized to be: (1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them; (2) notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal. * * * [citing authority]. Both the notice afforded and the opportunity to be heard must be appropriate to the nature of the charges made. * * [citing authority].

" * * *

"We need not decide whether a teacher has a formal right of confrontation or cross examination under I.C.A. § 279.13 because we find, as did the district court that this right was not denied to the plaintiff. Moreover, we do not view the Iowa statute as requiring an adversary proceeding where school officials are required to formally place witnesses on the stand and assume a burden of proof justifying a teacher's termination. Under § 279.13 we believe that formal charges or accusations may be made by written document as they were here. * * * [citing authority]. The fundamental purpose of the statute is to provide a teacher with notice of charges and opportunity to be heard." (Emphasis supplied).

Thus, in *Brouillette*, the court found though a teacher does not have a constitutionally protected property interest in continuing employment, he does have a right to an impartial decisionmaker and that such right arises from section 279.13 itself. This statute was intended to provide non-tenured teachers with procedural due process. It is obvious Keith too was entitled to an impartial decisionmaker. The question then is whether the trial court was correct in finding the board was not an impartial decisionmaker.

The board contends the fact it instigated and carried through the termination proceedings on its own motion does not per se establish it was not impartial. It argues as follows:

" * * * A board of honest, fair-minded men, acting in good faith as a School Board, might well feel that they were compelled to instigate proceedings which could lead to termination of a given teacher's contract. That type of Board, if confronted with convincing proof that the teacher was, indeed, of the calibre required by Board policy [Code 401], would have no problem in changing its position at the private conference or at the public hearing if the occasion warranted it. By the same token, such a Board would feel compelled to go forward with the termination proceedings already instigated if nothing occurred at either gathering to change their minds. Clearly, a Board worth its salt could, and would be expected to, instigate such termination proceedings and still remain impartial."

The issue here has been discussed by courts of other jurisdictions. Most of these cases have relied upon the reasoning of the United States Supreme Court in the case *In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. *Murchison* dealt with the Michigan practice whereby a single judge alone could act as a grand jury in order to conduct secret investigations. In the case the judge who had acted as a grand jury cited Murchison for contempt. This same judge then presided at the contempt trial. Upon his conviction of contempt Murchison appealed and the case eventually reached the Supreme Court of the United States.

The Court, 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. at 946 made the following comments pertinent hereto:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be con-

sidered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' * * * [citing authority]. *Such a stringent rule may sometimes bar trial by judges* who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice may satisfy the appearance of justice.' * * * [citing authority]." (Emphasis supplied).

It is obvious from the emphasized portion of the quoted statement there are instances when a judge may or may not act as prosecutor, judge and jury. The Court in *Murchison* left open the question when a judge may not act in this manner. The question was answered at the federal level in *Wilson v. Lincoln Redevelopment Corporation*, 488 F.2d 339, 342–343 (8 Cir. 1973), as follows:

" * * * The critical determination here in assessing the charge of partiality of the decisionmaker is *whether in weighing the evidence he is required to call on his own personal knowledge and impression of what occurred.* In such cases, the tenant would be deprived of his right to examine or cross-examine a crucial witness and the decisionmaker would become the arbiter of his own credibility and fairness. Cf. *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Tyler v. Swenson*, 427 F.2d 412 (8th Cir. 1970)." (Emphasis supplied).

In the present case it was necessary for the board to call upon their own personal knowledge and impression of what Keith had done or had failed to do because there were no other witnesses. The board had determined here from the very start Keith's performance as a teacher was not up to the highest calibre. It then called upon itself to judge the credibility of its own determination as to Keith's performance. We cannot comprehend how a board in this position could do otherwise than find itself to be composed of credible witnesses.

There can be no doubt the *Murchison* rule is the law of Iowa. In the case *Turnis v. Board of Education (Jones County)*, 252 Iowa 922, 109 N.W.2d 198, the court was faced with a unanimous vote by a joint board to create a new school system. This vote was challenged on the basis two board members had participated in the vote even though they had, as property owners, signed a petition urging creation of the new school system. The court in *Turnis*, 252 Iowa at 929–930, 109 N.W.2d at 203, made the following statement:

"Appellants also contend such participation violates due process. Of course no man can be a judge in his own case and he is not permitted to try cases where he has a special interest in the outcome, under the due process clause of our Constitutions. That interest, however, cannot be defined with precision. Circumstances and relationship must be considered. *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942.

"An administrative hearing in the exercise of judicial or quasi-judicial powers, of course, must be fair and impartial. But the constitutional requirement of due process is met by a fair hearing before a regular established administrative tribunal. * * [citing authority].

"We find herein no violation of due process. These two members were not the sole judges of the plan and their votes were not decisive. [The vote was 18 to 0 for creation of the new school system]. In addition, no special, personal, or pecuniary interest which would be sufficient to disqualify them appears."

Applying the *Turnis* reasoning to the case before us we find the board here was not only the sole judge but its vote was also decisive. Here the members' participation in the proceedings was not mere petition signing but rather consisted of investigation, instigation, prosecution and verdict rendering. It is obvious under the *Turnis* decision it was not possible for the board here to have been impartial.

The board argues the rule of cases like *Murchison* and those based on it does not

apply here because the board is not a judicial body. While it is true the board is not a judicial body, it is equally clear that " * * * a school board, in a matter of this kind, exercises quasi judicial functions, * * *." *Courtright v. Consolidated Ind. Sch. Dist.*, 203 Iowa 26, 30, 212 N.W. 368, 370.

Because the board was performing a quasi-judicial function the following comments are particularly pertinent:

"Although an administrative agency cannot possibly be under stronger constitutional compulsions in respect to disqualification than a court, the common-law rule of disqualification applicable to judges extends to every tribunal exercising judicial or quasi-judicial functions." 1 Am.Jur.2d, Administrative Law, section 63, pp. 859–860.

"An administrative officer exercising judicial or quasi-judicial power is disqualified or incompetent to sit in a proceeding in which he has prejudged the case, * * *." *Id.*, section 64, pp. 860–861.

The board argues it was the only body which could investigate and instigate the termination proceedings here because neither the superintendent nor the principal recommended Keith's contract be terminated. This argument is without merit. By testimony of its own member, Mr. Funderbunk, the board admits it was possible under Code 301 for the superintendent to instigate termination proceedings. Certainly the principal could have instituted proceedings under Code 427. If either of these two methods had been used it may have been possible for the board to have been an impartial decisionmaker.

The board argues if the court accepts Keith's theory no board could ever be found impartial. The possibility of impartiality disappears, it contends, under Keith's theory whenever a school board considers termination prior to a private conference because to consider such termination the board must have voted previously to terminate the contract. There is no merit in this contention. A vote to consider termination is not the equivalent of acting as prosecutor, judge and jury.

We point out as informative the fact section 279.13 as it has been amended since 1973 contains no provisions whereby a board can institute termination proceedings on its own motion. Section 279.13, The Code, 1977, provides for such procedures to be instituted only by the superintendent or his designee.

In our view there is substantial support in the record for the trial court's conclusion that in the present case there was lacking from procedural due process protection the element of an impartial decisionmaker since the school board was the body that instigated the termination proceedings.

However, the trial court applied an erroneous rule of law in dismissing plaintiff's petition in view of the procedural due process provided for non-tenured teachers in Code section 279.13.

In reaching this conclusion we are aware that it has been said time and time again that, " * * * school-constituted review bodies are the most appropriate forums for initially determining issues of this type, both for the convenience of the parties and in order to bring academic expertise to bear in resolving the nice issues of administrative discipline, teacher competence and school policy, which so frequently must be balanced in reaching a proper determination." *Sindermann v. Perry*, 430 F.2d 939, 944–945 (5 Cir. 1970). See also *Brouillette*, 519 F.2d at 129 and *Scheelhaase*, 488 F.2d at 243–244. We adhere to this statement of principle. But that reviewing body must be an impartial board or tribunal.

We do not intend by this decision to impair any authority the school board may have had under section 279.13, The Code, 1973, to make the final decision to renew or not to renew a teacher's contract when the procedural due process provided by this statute has been complied with. We call attention to the fact section 279.13, The Code, 1973, was amended by the 1976 Session of the Sixty-sixth General Assembly, chapter 1151, section 1.

What we do hold is that a non-tenured teacher was entitled under section 279.13,

The Code, 1973, to a hearing before an impartial board or tribunal. Keith did not have such a hearing. This requires reversal.

 VI. One other matter is before this court. The board wishes costs assessed against Keith in the appeal because Keith used too many cases in each argument upon appeal thereby causing the board a great loss of time and much effort in refutation of Keith's arguments. The board contends this is in violation of rule 14(a)(3) of the Rules of Appellate Procedure which became effective July 1, 1977.

We find no violation of this rule here.

With directions to the trial court to reinstate division 2 of plaintiff's petition and proceed with the matter in accordance with the Rules of Civil Procedure, the case is

Reversed and remanded.

All Justices concur, except REYNOLD-SON, J., who concurs specially.