Muriel BARNETT et al., Appellants,

v.

DURANT COMMUNITY SCHOOL DISTRICT, Appellee.

No. 2–57177.

Supreme Court of Iowa.

Jan. 19, 1977.

Marvin R. Adams and James L. Sayre, of Dreher, Wilson & Adams, Des Moines, for appellants.

Edward W. Kemp, Tipton, for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

The question here is whether an Iowa school board had authority in 1971 to agree in teacher employment contracts to reimburse teachers for tuition expended on approved graduate studies. The trial court ruled in this declaratory judgment action that such authority did not exist. We reverse.

Plaintiffs are 25 teachers employed by defendant Durant Community School District during the 1971–1972 and 1972–1973 school years. Their employment contracts included the following provision:

tuition refund: $320.00 maximum in any one year; courses taken for credit must be approved in advance by the superintendent; the teacher must return for duty the following year; in the event of resignation during the year, refund will be pro-rated on the basis of service rendered; refund will be made only if the teacher actually makes an "out of pocket" cash outlay for tuition.

Each of the plaintiffs took graduate courses during the 1971–1972 school year which were approved in advance by the superintendent. They also returned to their teaching duties for the 1972–1973 school year.

When they sought reimbursement for their expenditures of tuition in accordance with the agreement, the school board refused payment, acting on advice of the county attorney that the agreement was beyond the authority of the school district.

Plaintiffs filed a petition for declaratory judgment asking that the legality of the agreement be determined. Defendant school district did not dispute plaintiffs' allegations of fact but filed a motion for summary judgment alleging the board refusal of tuition reimbursement was correct because the agreement for reimbursement was unauthorized. The trial court sustained the motion, and this appeal followed.

The parties agree that the only powers of a school district are those expressly granted or necessarily implied in governing statutes. See *Silver Lake Consolidated School District v. Parker*, 238 Iowa 984, 990, 29 N.W.2d 214, 217 (1947).

The question here must be decided under the statutes existing at the time plaintiffs entered their 1971–1972 contracts. They rely on provisions in §§ 279.8, 279.12, 279.13, The Code, 1971.

In relevant part, those provisions are as follows:

The board shall make rules for its own government and that of the directors, officers, teachers, and pupils, * * * and aid in the enforcement of the same, and require the performance of duties by said persons imposed by law and the rules. (§ 279.8).

The board shall * * * elect all teachers and make all contracts necessary or proper for exercising the powers granted and performing the duties required by law. (§ 279.12).

Contracts with teachers shall be in writing, and shall state the length of time the school is to be taught, the compensation per week of five days, or months of four weeks, and that the same shall be invalid if the teacher is under contract with another board of directors in the state of Iowa to teach covering the same period of time, until such contract shall have been released, *and such other matters as may be agreed upon*, which may include employment for a term not exceeding the ensuing school year, except as otherwise authorized, and payment by the calendar or school month * * *." (emphasis added). (§ 279.13).

Thus, the school board is directed by § 279.8 to govern and supervise teachers. It is directed by § 279.12 to "make all

contracts necessary or proper for exercising the powers granted \* \* \*." It is directed by § 279.13 to put teacher contracts in writing, including the schedule of compensation "and such other matters as may be agreed upon, \* \* \*."

The legislature did not enumerate all the provisions which could be included in "contracts necessary or proper for exercising the powers granted." However, defendant contends that because § 279.13 requires teacher contracts to state the weekly or monthly rate of compensation, the legislature necessarily excluded methods of compensation like tuition reimbursement which are not part of the stated periodic salary. This view of § 279.13 is contrary to our prior holdings.

In *Miner v. Lovilia Independent School District*, 212 Iowa 973, 978, 234 N.W. 817, 819 (1931), this court said:

> It will be noted that this section is affirmatively mandatory rather than prohibitive. It requires that the contract, whatever it be, shall be in writing. It specifies certain specific subjects to be covered therein. It imposes no disability upon the contracting parties, except that the term of service shall not exceed one year. *Subject to this single disability, the right of contract, as between the contracting parties, is in no manner abridged.* (emphasis added).

This construction of § 279.13 was repeated in *Ashby v. School Township of Liberty*, 250 Iowa 1201, 1209, 98 N.W.2d 848, 854 (1959):

> The first paragraph of section 279.13 sets out certain matters contracts with teachers shall state. The only prohibition it contains is that the contract term of employment shall not exceed the ensuing school year, except as otherwise authorized. Not only is no other disability placed upon the contracting parties but the statute expressly permits the inclusion in the contract of "such other matters as may be agreed upon."

Section 279.13 does not bar agreements for tuition reimbursement.

Defendant does not question the authority of a school board under the 1971 statutes to grant teachers salary increments based on additional education, called "step" salary increases. The right to grant step increases is implied rather than expressly stated in the statutes. The purpose of these salary increments is obviously to encourage teachers to improve their skills to the ultimate benefit of the school district. The agreement for tuition reimbursement is motivated by the same objective. It is a different means to the same end. As in the case of step increases, tuition reimbursement compensates teachers for additional studies. In each instance the teacher must teach during the ensuing school year to receive the compensation. Moreover, the tuition reimbursement provision here included the additional restriction requiring course approval in advance. There is no difference in principle between step salary increments and tuition reimbursement for approved graduate studies.

This was recognized in a New York case in analogous circumstances. See *Board of Education of Union Free School District No. 3 of the Town of Huntington v. Associated Teachers of Huntington, Inc.*, 30 N.Y.2d 122, 331 N.Y.S.2d 17, 282 N.E.2d 109 (1972). Like Iowa school boards, the New York school board had general authority to enter contracts with teachers fixing terms and conditions of employment. The New York trial court had held a tuition reimbursement provision was unauthorized. On appeal, however, the decision was reversed, and on further appeal the provision was also upheld. See 62 Misc. 906, 310 N.Y.S.2d 929 (1970), for the decision of the trial court, and 36 A.D.2d 753, 319 N.Y.S.2d 469 (1971), for the decision of the appellate division.

In reversing the trial court, the appellate division said:

> \* \* \* [P]laintiff's agreement to pay the tuition for approved graduate studies that a teacher might undertake is, in effect, merely an undertaking to pay a further relatively small salary increment to teachers who are improving their skills. Plaintiff has the power to undertake to make such payments \* \* \*,

especially since the payments would further the statutory public purpose of increasing the skills of teachers in their professional capacity. 319 N.Y.S.2d at 470–471.

In affirming that holding, the court of appeals said:

The tuition reimbursement provision * * * clearly relates to a term and condition of employment. School boards throughout the State pay teachers a salary differential for completing a specified number of credit hours above the baccalaureate degree. Since graduate work tends to increase teacher skills and is beneficial to the school district, there is no reason why the Board should not encourage such work by absorbing one half of the tuition expense. 331 N.Y.S.2d at 21–22.

The same reasoning applies here.

Significantly, a 1972 Iowa attorney general's opinion relied on by the trial court in the present case cited the trial court opinion in *Huntington.* See Op.Ia.Att'y Gen. 390 (1972). We think the appellate division and court of appeals expressed a sounder view than the *Huntington* trial court.

One additional matter must be considered in ascertaining legislative intent in our 1971 statutes. A new paragraph was added to § 279.12 by the legislature in 1976, Acts 66 G.A., ch. 1150, § 1:

The board may approve a policy for educational leave for certificated school employees and for reimbursement for tuition paid by certificated school employees for courses approved by the board. For the purpose of this section "educational leave" means a leave granted to an employee for the purpose of study including study in areas outside of a teacher's area of specialization, travel, or other reasons deemed by the board to be of value to the school system.

This amendment was effective July 1, 1976. Although it does not purport to be retroactive, the fact it was enacted bears on the meaning to be accorded the prior statutes. An amendment may indicate an intent either to change the meaning of a statute or to clarify it. *Manilla Community School District v. Halverson,* 251 Iowa 496, 504, 101 N.W.2d 705, 710 (1960). Whenever it appears legislation may have been passed simply for the purpose of removing doubt from previous acts, the courts should give effect to that purpose. *Slutts v. Dana,* 138 Iowa 244, 250, 115 N.W. 1115, 1118 (1908).

The rule for ascertaining the purpose of the legislature is as follows:

Whether or not a subsequent statute sheds light upon the meaning of a former statute depends upon a number of circumstances. Where the original law was subject to very serious doubt, by permitting subsequent amendments to control the former meaning a great deal of uncertainty in the law is removed. And the legislature is probably in the best position to ascertain the most desirable construction. In addition it is just as probable that the legislature intended to clear up uncertainties, as it did to change existing law where the former law is changed in only minor details. Thus it has been asserted that "one well recognized indication of legislative intent to clarify, rather than change, existing law is doubt or ambiguity surrounding a statute." The New York court has established the following test: "The force which should be given to subsequent, as affecting prior legislation, depends largely upon the circumstances under which it takes place. If it follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight . . . If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute." 2A Sutherland Statutory Construction § 49.11 at 265–266 (Fourth Ed. 1973).

The amendment involved here occurred in the wake of controversy regarding the authority of school districts under the provisions of chapter 279 to do the things they

were expressly authorized to do by the amendment.

The 1972 attorney general's opinion relied on by the county attorney in advising defendant and by the trial court in its ruling had asserted school districts in Iowa could not expend funds to pay teachers on sabbatical leave or reimburse them for tuition for approved graduate studies. See Op.Ia.Att'y Gen. 390 (1972). The trial court's decision upholding the board's position was made in 1974, and the amendment was enacted in June 1976 during the pendency of this appeal. It appears the amendment was enacted in response to the attorney general's opinion and resulting controversy.

Considering these circumstances and the language of the affected statutes, we think the amendment was enacted to clarify rather than change existing law.

When read together, we believe §§ 279.8, 279.12 and 279.13, The Code, 1971, necessarily imply authority of the school board to agree in teacher contracts to reimburse teachers for tuition expended on approved graduate studies in consideration of their agreement to teach during that contract year and the following year. This authority comes well within the mandate of the school board to establish the terms and conditions of teacher employment in order to carry out its statutory responsibilities. In the language of § 279.12, the provision is "proper for exercising the powers granted and performing the duties required by law." The 1976 amendment illuminated legislative intent rather than added authority to include the provision in teacher contracts.

We hold that defendant had authority to agree to reimburse plaintiffs for tuition expense incurred by them in undertaking approved graduate studies in consideration of plaintiffs' teaching services in the current and ensuing contract years. The trial court erred in holding otherwise.

REVERSED.