**WEST DES MOINES EDUCATION ASSOCIATION, Appellee,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant,**

and

**Iowa Association of School Boards, Intervenor.**

No. 60460.

Supreme Court of Iowa.

May 17, 1978.

Rehearing Denied June 23, 1978.

Richard C. Turner, Atty. Gen., Marie A. Condon, Asst. Atty. Gen., John L. Ayers, Public Employment Relations Bd., Des Moines, for appellant.

Charles E. Gribble, of Dreher, Wilson, Adams & Jensen, Des Moines, for appellee.

John R. Phillips, Des Moines, for intervenor.

Meardon, Sueppel, Downer & Hayes, Iowa City, for amicus curiae League of Iowa Municipalities.

Considered by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

The Public Employment Relations Board (PERB) appeals from the judgment of the Polk District Court reversing a declaratory ruling issued by PERB upon petition submitted to it by the West Des Moines Education Association (Association). In its ruling PERB held the phrase "impasse item" as used in sections 20.22(3) and 20.22(11) of the Public Employment Relations Act (Act) as

it existed in the Code of 1975 meant subject category and, consequently, it held the parties must submit their final offers of a subject category to the arbitrator. The court in its judicial review of the PERB ruling reversed the PERB and determined the phrase "impasse item" referred to any word, clause, phrase, sentence or paragraph upon which the parties were in disagreement.

At this point it is necessary to explain certain matters about arbitration and to explain how the Public Employment Relations Act works. In its brief to this court the PERB set out explanations of both matters which are particularly succinct. It stated:

"In labor relations law, there are two basic kinds of binding arbitration of labor disputes. Arbitration is most frequently used for the resolution of grievances. The term-of-art for this type of arbitration is 'rights' arbitration. The second principal type of arbitration is used in the resolution of a contract negotiations dispute. This type of arbitration, which is of the type at issue here, is called 'interest arbitration.'

"Interest arbitration itself is of two basic types. 'Final offer' arbitration or 'conventional' arbitration. In conventional arbitration the arbitrator simply arrives at a result and makes his award either on the position advocated by one of the parties or at a point between the positions of the parties.

"In 'final offer' arbitration the arbitrator must select the position of one of the parties and may *not* select a compromise position.

"It is the 'final offer' system which the Iowa legislature incorporated into our statute. Final offer arbitration must be distinguished from conventional arbitration.

"As we stated to the court below, the differences between the forms of arbitration were recently summarized as follows:

" 'In conventional arbitration, the arbitrator tailors a resolution which resolves the bargaining impasse. The arbitrator can, and many times does, fashion a remedy somewhere between the last offers of the parties.

" ' * * *

" 'However, a problem commonly perceived concerning a conventional arbitration is its "narcotic effect." This problem is believed to stem from the arbitrator's real or imagined tendency to "split the difference" between the parties' positions. Management argues that because the employee organization is primarily the demanding party in negotiations, with conventional arbitration as an end result, true collective bargaining will not occur if the employee representative feels ultimate victory lies in the hands of the arbitrator rather than at the bargaining table. In other words, the availability of conventional arbitration will have a "chilling" effect on the parties' incentives to bargain in good faith.

" 'In order to limit this chilling or narcotic effect, Legislatures have developed a form of arbitration which circumscribed the arbitrator's discretionary power—final-offer arbitration. Final-offer arbitration limits the arbitrator to choosing between the last and the best offer of one party or the other on an entire package basis or on an issue-by-issue basis based upon a rule of reasonableness generally spelled out in the enabling legislation. The virtue of this type of arbitration is that it is final and binding on the parties based upon their proposed last and best offers without granting the arbitrator an undue amount of discretion. Thus, there is an element of coercion which encourages mutual agreement because a third party will select one of the offers as binding without compromise between them. In other words, "final offer arbitration should not have a chilling effect because it will function as a 'strikelike' mechanism by posing potentially severe costs of disagreement in a manner that conventional arbitration does not." If the parties are sensitive to what will be perceived as reasonable by the arbitrator, they will tend to tailor their final offer in that manner.'

"(Rynicki and Gausden, 'Current trends in public sector Impasse Resolution' *State Government*, Autumn 1976 at 274–276).

"  *  *  *

"We now describe the context in which collective bargaining negotiations take place when a 'impasse' exists, i. e. where the parties cannot agree on the terms of the collective bargaining agreement they may seek the assistance of a series of 'neutrals' in resolving the dispute.

"Arbitration under the Public Employment Relations Act is but the last of three steps in the statutory procedure. The first step in this process is mediation. Section 20 of the Public Employment Relations Act provides for the appointment of a mediator at the request of either party to the dispute. The mediator's function is to guide the parties toward a resolution of the dispute by persuasion, by analysis, and by seeking modifications in each side's position. Mediation is not an adjudicative or quasi-adjudicative process. The number of issues which are unresolved going into mediation is reduced substantially during this process and typically, where complete settlement is not achieved, only a handful of issues remain for the next step in the process.

"Failing a settlement of the dispute in mediation, Section 21 of the Public Employment Relations Act requires the appellant Board to appoint a *fact-finder*. The fact-finder is required to conduct a hearing, take evidence and issue written findings of fact and a recommendation for the resolution of the dispute. The fact-finder is not limited to the final offers of the parties when making his recommendation but is permitted to recommend any solution. We submit that the definition of impasse item sought by the appellee is more appropriately restricted to a proceeding in front of a fact-finder who does not function under a statutory mandate wherein he must choose one of two offers submitted to him.

"Frequently, after the fact-finding stage of the process, the parties reach agreement on some of the issues and typically the arbitrator is asked to resolve fewer issues than was the fact-finder.

"The parties are not compelled, however, to accept the fact-finder's report and either party may request, under § 22 of the Public Employment Relations Act, the appointment of a panel of three arbitrators or a single arbitrator.

"The panel or the single arbitrator conducts a hearing, takes evidence and issues an award which is final and binding on the parties.

"The Iowa 'final offer' scheme contains a wrinkle not found elsewhere and not at issue here wherein the arbitrator may choose among not only the offers of the parties, but also may choose the position taken by the fact-finder on the issue.

"Thus, in a contract negotiation, the parties would ordinarily commence with all items at issue and unresolved and would proceed through few or many negotiation sessions to seek and reach agreements on numbers of issues.

"Then, if they require the help of neutral third parties, the Public Employment Relations Act provides a system which clearly contemplates a continued narrowing or reduction of the unresolved issues. This process continues to the last point, final offer arbitration, known also as last offer arbitration, or forced-choice arbitration, which is designed to encourage hard bargaining by the parties before they resort to arbitration. Final offer interest arbitration enables 'the parties to retain maximum participation all the way up to finalization of a decision with minimum exercise of power by a third party.'" (Emphasis in original).

We set out the chronological order of events in this case. July 22, 1976, the Association filed a petition with the PERB wherein it sought a declaratory ruling on the meaning of the phrase "impasse item" as used in sections 20.22(3) and 20.22(11), The Code, 1975. July 30, the Iowa Association of School Boards (IASB) requested an opportunity to intervene in the proceedings by way of presentation of evidence. August 16 this request was granted. October 8 the PERB filed its declaratory ruling. October 19 the Association applied for rehearing which was denied two days later. November 17 the Association filed a petition for judicial review in the Polk District

Court. February 2, 1977, the trial court filed its findings of fact, conclusions of law and decree reversing the PERB and holding the phrase "impasse item" referred to any word, clause, phrase, sentence or paragraph upon which the parties to arbitration under the Act were in disagreement. The PERB appeals from this decree.

July 15 the League of Iowa Municipalities (League) filed with this court a motion for leave to file a brief amicus curiae. The motion was sustained and the League has filed its brief with this court.

In its petition before the PERB, the Association asked for a declaratory ruling pursuant to section 17A.9, The Code, 1975. That section of the Iowa Administrative Procedure Act provided:

"Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision, rule or other written statement of law or policy, decision or order of the agency. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

The Association pointed out sections 20.-22(3) and 20.22(11), The Code, 1975, were as follows:

"3. The submission of the impasse items to the arbitrators shall be limited to those issues that had been considered by the fact-finder [appointed by the PERB under section 20.21, The Code, 1975, when after mediation has been attempted it has failed to effectuate a settlement of the dispute] and upon which the parties have not reached agreement. With respect to each such item, the arbitration board award shall be restricted to the final offers on each impasse item submitted by the parties to the arbitration board or to the recommendation of the fact-finder on each impasse item.

"    *    *    *

"11. A majority of the panel of arbitrators shall select within fifteen days after its first meeting the most reasonable offer, in its judgment, of the final offers on each impasse item submitted by the parties, or the recommendations of the fact-finder on each impasse item."

The Association also reminded PERB it had defined impasse item in its rule 1.6(5) [660–1.6(5), I.A.C.] as follows:

" 'Impasse item' means any term which was the subject of negotiations and proposed to be included in a collective bargaining agreement upon which the parties have failed to reach agreement in the course of negotiations, except as provided for in 6.1(20). Failure of the parties to agree upon impasse procedures shall not constitute an impasse item or compel implementation of impasse procedures."

The Association then posed hypothetical questions to the PERB which when answered would give it practical examples of the PERB's interpretation of the phrase.

After a hearing on September 16 at which the Association and the IASB presented arguments, the PERB issued its ruling on October 8 which in pertinent part is as follows:

"    *    *    *    The primary purpose in promulgating Rule 1.6(5) was to ensure that the *subject* submitted to arbitration was one upon which the parties had an opportunity to negotiate prior to arbitration. It was not intended to specify with precision the literal scope of an impasse item, be that a word, sentence, paragraph, section, chapter or article.

"In attempting to provide some guideline as to the pragmatic usage of impasse items in impasse resolution, we first recognize that the Act provided for a specific type of finality—final offer arbitration.

"Known also as last offer arbitration, or forced-choice arbitration, this impasse resolution mechanism is designed to encourage hard bargaining by the parties before they resort to arbitration. Final offer interest arbitration enables 'the parties to retain maximum participation all the way up to finalization of a decision with minimum exercise of power by a third party.' Thus, the 'emphasis in last offer is for the parties to reach agreement short of arbitration, but failing that, the goal of the procedure is to

ensure that the offers will be reasonable and afford the arbitrator little discretion.'

"Because the purpose of this procedure is to enhance the reasonableness of the parties' offers and, hence, reduce the discretion of an arbitrator, it is our opinion that anything which serves to fractionalize a particular subject of negotiations will likely erode the effectiveness of the procedure. Thus, we believe that the parties are required to submit to an arbitrator their final offer on a subject category basis, and that each subject category submitted shall constitute an impasse item.

"We recognize that in any given bargaining situation the offers of the parties may differ in approach or content, and that within or among those offers it may be difficult to specifically identify the 'impasse item.' For example, one party may propose seniority as a factor for consideration separately in a number of different subject areas, whereas another party may propose one seniority offer which by its terms would apply to other subject areas. Because the determination of what constitutes an impasse item will necessarily involve a discretionary decision based upon the facts of a particular bargaining situation, we believe that determination can best be made by the arbitrator or arbitrators, who alone or in combination are in the best position to do so having heard the evidence and positions of the parties." (Emphasis in original).

The PERB then answered the questions propounded by the Association. It stated in part the following:

"1. Assuming that the West Des Moines Education Association and the West Des Moines Community School District are using the statutory impasse procedures and prior to arbitration have reached agreement on all parts of the grievance procedure with the exception of the Association having the right to grieve.

"(a) The position of the West Des Moines Education Association in its final offer to the arbitrator is that the Association should have the right to grieve.

"(b) The position of the West Des Moines Community School District in its final offer to the arbitrator is that only the individual employees should have the right to grieve.

"(c) The fact-finder adopted the position of the West Des Moines Community School District.

"*Question 1.1* Is the Association's right to grieve an impasse item as the term 'impasse item' is used in Sections [20.]22.3 and [20.]22.11 of the Public Employment Relations Act and as defined in Public Employment Relations Board Rule [660–]1.6(5)?

"*Answer*: Yes.

"2. Assuming that the West Des Moines Education Association and the West Des Moines Community School District are using the statutory impasse procedures and have reached agreement on some parts of the grievance procedure prior to arbitration, but in their final offers to the arbitrator the parties have differences on the following:

"(a) The Association's right to grieve. (association's position yes; school district's position no).

"(b) The definition of a grievance. (association's definition includes contract and board policy; school district's definition includes contract only).

"(c) How many days after the alleged occurrence of the grievance the employee should have to file a grievance. (association's position 20 days; school district's position 5 days).

"(d) If the grievance procedure should provide for the filing of group grievances. (association's position yes; school district's position no).

"(e) Whether the grievance procedure should end with binding or advisory arbitration. (association's position binding arbitration; school district's position advisory arbitration).

"The fact-finder adopted the position of the West Des Moines Community School District on (a), (b), (c), (d) and (e).

"*Question 2.1* If the answer to Question 1.1 is that the Association's right to grieve

does constitute an impasse item, is it still a separate impasse item under paragraph 2 as the term 'impasse item' is used in Sections [20.]22.3 and [20.]22.11 of the Public Employment Relations Act and as defined in Public Employment Relations Board Rule [660–]1.6(5)?

"*Answer*: No.

"*Question 2.2* Do (a), (b), (c), (d) and (e) above each constitute separate impasse items?

"*Answer*: No.

"*Question 2.3* Do (a), (b), (c), (d) and (e) constitute one impasse item?

"*Answer*: Yes.

"*Question 2.4* Can the arbitrator choose the Association's position on (a) above and the school district's position on (b) above?

"*Answer*: No.

"*Question 2.5* Must the arbitrator choose the Association's position on (a), (b), (c), (d) and (e) above as a package or the school district's position on (a), (b), (c), (d) and (e) above as a package?

"*Answer*: Yes."

After its petition for rehearing was denied, the Association filed a petition for judicial review. In that petition it alleged: " * * *

"16. That the West Des Moines Education Association has been prejudiced by the ruling of the Public Employment Relations Board because the agency action is:

"(a) In violation of statutory provisions, specifically Sections 20.22(3) and 20.22(11), Code of Iowa (1975), which clearly state that the arbitrator is to render an award on each item of disagreement between the parties and not each subject category of disagreement between the parties.

"(b) In excess of the statutory authority of the agency in that if the legislature had intended the arbitrator to rule on only each subject category instead of each impasse item it would have so stated. A change in the law from final offer arbitration on each item to each subject category can be made only by the legislature, not the Public Employment Relations Board.

"(c) In violation of an agency rule, specifically Public Employment Relations Board Rule [660–]1.6(5) which states that impasse item means any *term* which was a subject of negotiations.

"(d) Unsupported by substantial evidence in that the Public Employment Relations Board cited in its ruling no case law or other legal authorities to support its opinion.

"(e) Unreasonable, arbitrary and capricious and characterized by an abuse of discretion in that the Public Employment Relations Board substituted its personal opinion for the clear wording of the statute." (Emphasis in original).

In its prayer for relief the Association asked the court to reverse the PERB and to find that an impasse item is each item of dispute between the parties including each word, clause, phrase or paragraph on which the parties are in disagreement and that an impasse item is not a subject category.

January 18, the court heard oral arguments by the parties and requested that briefs be filed by them. After considering the evidence and briefs, the court concluded the ruling of the PERB " * * * should be reversed because the ruling is in violation of the express statutory provisions set forth in Sections 20.22(3) and 20.22(11), *Code of Iowa* (1975)." It held an impasse item is any "word, clause, phrase, sentence or paragraph on which the parties are in disagreement." It then answered the hypothetical questions prepared by the Association in a manner consistent with its holding.

The PERB appeals from all rulings and orders inhering in the trial court's judgment. Briefs in this matter have been filed by the Association, PERB, IASB and amicus curiae League.

The following issue is presented for review: Did the trial court err in reversing the PERB because it found the phrase "impasse item" as used in sections 20.22(3) and 20.22(11) of the Public Employment Relations Act meant any word, clause, phrase, sentence or paragraph upon which parties

to arbitration under the Act were in disagreement?

I. In oral argument before this court the IASB and the PERB contended a court may not reverse the PERB's ruling unless that ruling was unreasonable, clearly erroneous and not in line with the ultimate aims of the statute involved. In its brief to this court the IASB raised the further argument the PERB's interpretation of the act which it administers was entitled to some deference by this court and the court below. It contends neither court may second guess the agency and neither court may displace the agency's choice between two fairly conflicting views as they might were the matter before the courts de novo.

■ Recently in *Iowa Public Service Company v. Iowa State Commerce Commission,* 263 N.W.2d 766, (Iowa, filed March 22, 1978), this court explained a trial court under the Iowa Administrative Procedure Act (IAPA) exercises appellate jurisdiction when it reviews an agency action. The agency action in the matter before us involved interpretation of a statute. Interpretation of a statute is a question of law which must be determined by the judiciary. *Davenport Water Co. v. Iowa State Commerce Com'n,* 190 N.W.2d 583, 592 (Iowa 1971); *Hanson v. Iowa State Commerce Commission,* 227 N.W.2d 157, 162 (Iowa 1975).

In regard to the oral arguments of the IASB and the PERB the following statements of law from 2 Am.Jur.2d, Administrative Law, section 656, pp. 517–518, are apposite:

"The interpretation of a statute or regulation involves a question of law, and statutory construction is the function of the courts, * * *. Since the statutes under which administrative agencies act contain the policy which the legislature desires to be pursued and the standards which are to control the pursuit of that policy, and judicial review is an additional assurance that the legislative policies will be executed, the matter of statutory construction is not finally entrusted to administrative agencies, but is determinable ultimately by the courts. * * *

"The court will determine the meaning of the words of a statute and its intent, especially where the matter involves an accommodation between conflicting statutory policies, or is unembarrassed by any disputed question of fact or any necessity to draw an inference of fact from the basic findings, and will set aside a determination based upon an erroneous construction or interpretation."

In connection with the matter of the deference to be accorded by a reviewing court to an agency's interpretation of the statute it administers, the following statements from 2 Am.Jur.2d, Administrative Law, section 656, p. 519, are pertinent here:

"In questions of statutory interpretation the court on review must give appropriate weight to the judgment of those whose special duty it is to administer the questioned statute. The reviewing court in deciding questions as to the proper interpretation and application of a statute may properly attach weight, or great weight, to the decision of such question by an administrative agency having special competence to deal with the subject, in line with the general principle that courts will give great weight to the administrative construction of a statute. *Nevertheless, the administrative construction or application is not conclusive on review or otherwise. The court bears the responsibility of reaching an independent decision, and it is the duty of the courts to set aside determinations in which the expert agency passes beyond its statutory powers whose limits are determined by the courts.*" (Emphasis supplied).

One such limit was set by this court in *Iowa Dept. of Rev. v. Iowa Merit Employ. Com'n,* 243 N.W.2d 610, 613 (Iowa 1976), where the court stated:

"While an administrative agency's construction of statutes and the rules it administers is entitled to weight, '[a]n administrative body may not make law or change the legal meaning of the common law or the statutes.' *Holland v. State of Iowa,* 253 Iowa 1006, 1010, 115 N.W.2d 161, 164 (1962).

Phrased otherwise, this court is not bound by Department's views regarding Code chapter 19A."

■ This court must make an independent determination here of the meaning of the phrase "impasse item." We may give weight to the agency's interpretation if that interpretation does not make law or change the legal meaning of the statute.

II. Before reaching our determination of the meaning of the phrase at issue, we must first consider an argument raised by the IASB and the League. In effect, they argue the trial court based its reversal of the PERB's ruling on the wrong ground.

Section 17A.19(8) of the IAPA contains the grounds upon which an agency's action may be affirmed, reversed, modified or remanded. That section provides:

"8. The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

"a. In violation of constitutional or statutory provisions;

"b. In excess of the statutory authority of the agency;

"c. In violation of an agency rule;

"d. Made upon unlawful procedure;

"e. Affected by other error of law;

"f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or

"g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."

The trial court found " * * * the ruling of the Public Employment Relations Board should be reversed because the ruling is in violation of the express statutory provisions set forth in Sections 20.22(3) and 20.22(11) *Code of Iowa* (1975)." It appears the court based its reversal on section 17A.19(8)(a).

In the next division of this opinion we will consider the principal issue presented by this appeal. In view of the determination we will reach there it is deemed unnecessary to consider the contention of IASB and the League that the trial court based its reversal on the wrong ground. Although there were other grounds upon which the trial court could have based its decision, we are convinced the trial court did not base its decision on the wrong ground. Stated differently, if we were to determine that the trial court was otherwise correct in its interpretation of the phrase at issue, the contention urged in this division would not, in our opinion, justify reversal.

III. The phrase "impasse item" is not defined in chapter 20, The Code. The parties here do not dispute the meaning of the word "impasse." They apparently accept the meaning given the word in the Act: " 'Impasse' means the failure of a public employer and the employee organization to reach agreement in the course of negotiations." Section 20.3(10), The Code, 1975. Their disagreement centers around the word "item." The Association contends the word refers to any word, clause, phrase, sentence or paragraph while the other parties here argue it refers to a subject category of negotiable items.

■ This court must determine the intent of the legislature. Our construction of this statute must be sensibly and fairly made with a view of carrying out this intent. *In re Marriage of Williams*, 199 N.W.2d 339, 344 (Iowa 1972).

Our research indicates the majority of researchers and writers on the topic of final offer arbitration agree that where subject category or package final offers, rather than issue by issue final offers, must be submitted to the arbitrators, the goals of final offer arbitration are more nearly fulfilled.

In Final Offer Selection—Panacea or Pandora's Box?, 19 N.Y.L.F. 567, 578–579 (No. 3, 1974), appears the following pertinent comments by Arnold M. Zack:

"The choice in final offer selection should be between total packages rather than issue by issue. Although it is true that a more equitable resolution might be achieved if the decisions were made on an issue by issue basis, and certainly the arbitrators would be more comfortable with this arrangement, it must be borne in mind that the sense of reasonableness on the part of the arbitrator and the achievement of the most equitable or desirable agreement, are not the primary purposes of final offer selection. Rather, the objective is independent settlement by the parties. The greater the risk to each party of submitting a final offer, the greater the likelihood of settlement. Each party must run the risk of its whole package being thrown out because of the unreasonableness or unacceptability of even one element therein. Only in that way can the greatest pressure be exerted on the parties for direct settlement. Indeed, to the extent that a whole package may be thrown out because of one element which is deemed objectionable by the arbitrator, * * *, the prospect is improved for future voluntary settlements.

"Issue by issue arbitration encourages leaving political and low priority demands on the table, wasting the time and money of both parties and cluttering the procedure. Forcing the parties to drop such demands or place them in the final offer, is likely to dispose of most, if not all, such items. There are, of course, situations where it is not politically feasible for a party to voluntarily withdraw such items. To provide for situations where the negotiators on both sides of the bargaining table recognize the need for saving face, there should be a mechanism permitting them to 'get off the hook'. A fact-finding or an ancillary 'informed award' [occurs when the negotiators privately work out a settlement of the impasse and the arbitrator adopts the results thereof as his award] arbitration procedure would serve such end.

"It should be noted that the final offer selection procedure does not easily lend itself to issue by issue determination. Multiple proposals are too often intertwined and dependent upon one another. For example,

whether certain fringe benefits should be granted, or more paraprofessional aides hired, depends upon the total amount of money allocated to the entire package. Twin issues such as whether or not an additional step should be added to the increment schedule, or longevity increases granted, cannot practically be separated in an issue by issue final offer selection. Such related items are best handled on the package basis."

See also Final Offer Arbitration: The Last Word in Public Sector Labor Disputes, 10 Colum.J.L. & Soc.Prob. 525, 550–553, 558–559, 562–563 (1974); James L. Stern, Charles M. Rehmus, J. Joseph Loewenberg, Hirschel Kasper & Barbara D. Dennis, Final-Offer Arbitration, Ch. 7 (1975) [hereinafter cited as Stern]. *Contra* Compulsory Arbitration in the Public Sector: A Proposed Alternative, 25–26 Arb.J. 226, 231–232 (1970–1971). *See generally* Impasse Resolution Mechanisms and Teacher Strikes, 7 U.Mich.J.L.Ref. 575 (No. 1 1973); Final Offer Selection in National Emergency Disputes, 27 Arb.J. 85 (1972); and Political Aspects of Public Sector Interest Arbitration, 64 Calif.L.Rev. 678 (1976).

If the objectives of final offer arbitration are to be carried out it is plain they will best be carried out through a system whereby the parties must make final offers on subject categories.

Chapter 20 contains provisions which indicate to us the legislature intended to carry out the objectives of final offer arbitration through a system mandating subject category final offers.

Section 20.9 delineates the scope of negotiations between the parties. It provides in pertinent part as follows:

"The public employer and the employee organization shall meet at reasonable times, including meetings reasonably in advance of the public employer's budget-making process, to negotiate in good faith with respect to *wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures,*

*job classifications, health and safety matters, evaluation procedures, procedure for staff reduction, in-service training* and other matters mutually agreed upon." (Emphasis supplied).

As the IASB correctly points out the emphasized portion of this provision deals with subjects of negotiation, not with the individual words, phrases, clauses, sentences or paragraphs of these subjects. This provides strong evidence the legislature intended subject categories to be submitted to the arbitrator.

Sections 20.21 and 20.22(11) also provide indications the legislature intended to achieve the objectives of final offer arbitration through establishment of a system of subject category final offers. Section 20.21 provides for a fact-finder who is to make recommendations for resolution of the impasse reached between the public employer and public employee organization. Section 20.22(11) makes clear the arbitrator may choose only one of three positions, that of either party or that of the fact-finder.

In our system the fact-finder is a neutral who would be expected to recommend to the arbitrator the most reasonable offer. The arbitrator, mindful of the fact-finder's neutrality, will often be prone to choosing the fact-finder's position in making his award. This propensity will force the parties to make more reasonable offers because the party who wins over the fact-finder will enter arbitration with a powerful ally. The party which fails to have the fact-finder recommend its position will be forced to think long and hard before it continues on to arbitration.

In addition, section 20.22(4)(d) makes the "losing" party at fact-finding level even less likely to continue on to arbitration. This section requires the parties to pay the costs of arbitration. A losing party who continues on to arbitration and loses will have a difficult time explaining to its constituents why it incurred the expense of arbitration when the probability of losing was so great.

In our opinion these sections are an attempt to carry out the objectives of final offer arbitration. Together they make it imperative that the parties present reasonable offers at the fact-finding stage, which in itself promotes settlement. They encourage settlement after fact-finding and prior to arbitration.

The Association points out the example of Michigan's experience with final offer arbitration. The Michigan system clearly provides for issue-by-issue final offer arbitration. We have studied this system and find it does not seek as strongly as does our system to carry out the objectives of final offer arbitration.

In *Stern*, Final Offer Arbitration, at pp. 70–71, appear the following pertinent comments about the Michigan experience:

"Settlement of negotiations by the parties themselves, with or without mediation, is still the rule rather than the exception. After five years of experience under mandated binding arbitration, in over half of the public safety negotiating relationships in Michigan no petition for arbitration has ever been filed. In over two-thirds of these relationships, no arbitration award has ever been rendered. Under these circumstances, it is clear that a rough equality of bargaining power has been created between most organized public safety officers and their employers. It is equally clear that the possibility of arbitration has not eroded significantly the ability of the large majority of these parties in most of their negotiations to settle amicably upon terms and conditions of employment.

"It is equally clear, however, that the substitution of binding final-offer arbitration on each economic issue for conventional arbitration has not significantly discouraged recourse to arbitration. * * * On balance, it does not appear that the final-offer variant in Michigan has had any major impact on either the frequency of settlements or the likelihood of impasses requiring arbitration.

"Final-offer arbitration of each economic issue does not appear to have reduced significantly the number of issues the parties take to arbitration. In half of the first 14

awards rendered under the final-offer amendment, 15 or more issues were submitted to the arbitration panel. The average number of issues per case in which awards have been rendered is 12, which figure is almost identical with the average number taken to arbitration under the Michigan conventional arbitration statute. To the extent that it was originally theorized that final-offer arbitration would at least reduce the necessity for awards except on the most intractable and toughest issues, the promise of the theory has not been borne out in practice.

" * * *

"Of course an arbitration statute has the ultimate purpose of providing an acceptable procedure for dispute resolution without disruption of vital services. During the 39 months of conventional arbitration in Michigan, there were no strikes by firefighters and only a few by police. All but one of these were of short duration and only one was against an arbitration award. There have been no strikes, work stoppages, or significant job actions by public safety officers since the final-offer amendment was adopted. By this test of statutory effectiveness, final-offer arbitration by economic issue has fared well—although no claim of causality is advanced."

The issue-by-issue system as used in Michigan does not carry out major objectives of final offer arbitration. It fails to reduce the number of arbitration cases or the number of issues presented to the arbitrator by the parties.

It is our view the legislature in adopting final offer arbitration between public employers and employees intended to provide for the carrying out of all the objectives of such arbitration through a system mandating subject category final offers. The Association's reliance upon the Michigan experience is misplaced.

In order to carry out this legislative intent we interpret the phrase "impasse item" means subject categories which requires the parties to submit to an arbitrator their final offer on a subject category basis.

Each subject category submitted shall constitute an impasse item.

The PERB was correct in its interpretation of the phrase and in its answers to the questions presented by the Association. The trial court was incorrect in its interpretation and in its answers.

The Association in its written brief and argument asserts there is a third basic type of arbitration, namely, package final arbitration where the arbitrator takes either the final offer of the public employer on all issues in the dispute or the final offer of the employee organization on all issues in dispute. In reaching the foregoing conclusion we have not deemed it necessary to deal specifically with this type of arbitration.

In reaching this conclusion we have considered every other contention urged by the Association in support of the trial court's ruling whether specifically mentioned or not and find none which persuade us to reach a different conclusion.

The case is therefore

Reversed.