CHARLES CITY EDUCATION
ASSOCIATION, Appellee,

v.

PUBLIC EMPLOYMENT RELATIONS
BOARD, an agency of the State of
Iowa, Appellant,

and

Charles City Community School District,
Intervenor-Appellant.

No. 63463.

Supreme Court of Iowa.

April 23, 1980.

Rehearing Denied May 16, 1980.

Thomas J. Miller, Atty. Gen., Nancy D. Powers, Asst. Atty. Gen. and Hugh J. Perry, Labor Relations Examiner, Des Moines, for appellant.

Judith O'Donohoe of Erb, O'Donohoe & Frye, Charles City, for intervenor-appellant.

Charles E. Gribble of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellee.

McGIVERIN, Justice.

Respondent Public Employment Relations Board (PERB) and intervenor Charles City Community School District (District) appeal from a district court judicial review decision holding that the *nature* of the postgraduate education hours necessary to advance a teacher on a salary schedule was included within the meaning of "wages" in section 20.9, The Code 1977, and thus a mandatory subject of bargaining between the District and petitioner Charles City Education Association (Association) under the Iowa Public Employment Relations Act, Chapter 20 of the Code. PERB had ruled that the nature of the hours necessary for advancement was a question of job qualification, a matter of management prerogative, and therefore a permissive subject of bargaining. We reverse the ruling of the district court.

The issue in question arose in the course of contract negotiations late in 1978 between the Association, and "employee organization" under section 20.3(4) representing the teachers, and the District, a "public employer" under section 20.3(1). The Association submitted for mandatory negotiation a proposal [1] regarding the *nature* of post graduate hours that would qualify an

---

**1.** Section 11.3 . . . 2. Educational Lanes

An employee on the regular salary schedule who moves from one educational lane to a higher educational lane shall move to the corresponding eligible step on the higher lane. Advancement on the salary schedule will be in accordance with any of the following guidelines:

a) Semester hours earned as credit for advancement to a higher educational lane must be earned through an accredited senior college.

b) Advancement to the M.A. lane shall be granted if the M.A. is in the employee's field. An exception may be granted if prior approval has been granted by the Superintendent.

educator for advancement along a district salary schedule, which was also proposed by the Association.[2] Following disagreement as to whether the proposal regarding the *nature* of qualifying credit hours was a mandatory subject of bargaining, the District petitioned PERB requesting a resolution of the negotiability dispute. There was no dispute before the PERB as to whether the negotiability of the amount of pay or the number of hours necessary for advancement was a mandatory subject of bargaining. The Association made an application to intervene, which was granted.

c) Semester hours earned by employees for advancement to any other educational lane shall be granted for credit provided any of the following is valid:

1) The hours are in the employee's teaching endorsements.

2) The hours are accepted as credit toward an advanced degree in the employee's teaching endorsements.

3) The hours are applied toward certificate renewal.

2.

PROPOSED SALARY SCHEDULE 1970–1980
Base $11,000

| Step | BA | BA + 12 | BA + 24 | MA | MA + 10 | MA + 20 | MA + 30 |
|------|-----|---------|---------|-----|---------|---------|---------|
| 1 | 11,000 1.00 | 11,550 1.05 | 12,100 1.10 | 12,650 1.15 | 13,200 1.20 | 13,750 1.25 | 14,300 1.30 |
| 2 | 11,400 1.04 | 11,990 1.09 | 12,540 1.14 | 13,090 1.19 | 13,640 1.24 | 14,190 1.29 | 14,740 1.34 |
| 3 | 11,880 1.08 | 12,430 1.13 | 12,980 1.18 | 13,530 1.23 | 14,080 1.28 | 14,630 1.33 | 15,180 1.38 |
| 4 | 12,320 1.12 | 12,870 1.17 | 13,420 1.22 | 13,970 1.27 | 14,520 1.32 | 15,070 1.37 | 15,620 1.42 |
| 5 | 12,760 1.16 | 13,310 1.21 | 13,860 1.26 | 14,410 1.31 | 14,960 1.36 | 15,510 1.41 | 16,060 1.46 |
| 6 | 13,200 1.20 | 13,750 1.25 | 14,300 1.30 | 14,850 1.35 | 15,400 1.40 | 15,950 1.45 | 16,500 1.50 |
| 7 | 13,640 1.24 | 14,190 1.29 | 14,740 1.34 | 15,290 1.39 | 15,840 1.44 | 16,390 1.49 | 16,940 1.54 |
| 8 | 14,080 1.28 | 14,630 1.33 | 15,180 1.38 | 15,730 1.43 | 16,200 1.48 | 16,830 1.53 | 17,389 1.58 |
| 9 | 14,520 1.32 | 15,070 1.37 | 15,620 1.42 | 16,170 1.47 | 16,720 1.52 | 17,270 1.57 | 17,820 1.62 |
| 10 | 14,960 1.36 | 15,510 1.41 | 16,060 1.46 | 16,610 1.51 | 17,160 1.56 | 17,710 1.61 | 18,260 1.66 |
| 11 | 15,400 1.40 | 15,950 1.45 | 16,500 1.50 | 17,050 1.55 | 17,600 1.60 | 18,150 1.65 | 18,700 1.70 |
| 12 | 15,840 1.44 | 16,390 1.49 | 16,940 1.54 | 17,490 1.59 | 18,040 1.64 | 18,590 1.69 | 19,140 1.74 |
| 13 | 16,280 1.48 | 16,830 1.53 | 17,380 1.58 | 17,930 1.63 | 18,480 1.68 | 19,030 1.73 | 19,580 1.78 |
| 14 | 16,445 * 1.495 | 16,995 * 1.545 | 17,545 * 1.595 | 18,370 1.67 | 18,920 1.72 | 19,470 1.77 | 20,020 1.82 |
| 15 | | | | 18,810 1.71 | 19,360 1.76 | 19,910 1.81 | 20,460 1.86 |
| 16 | | | | 18,975 * 1.725 | 19,525 * 1.775 | 20,350 1.85 | 20,900 1.90 |
| 17 | | | | | | 20,515 * 1.865 | 21,065 * 1.915 |

PERB ruled unanimously that the disputed proposal was a permissive subject of bargaining because the *nature* of the credit hours was directly related to the qualifications for the teaching position; and that while the *number* of semester hours to be utilized in the salary schedule was a mandatory subject of bargaining, the determination of which college courses shall qualify as credit hours per column is a management prerogative and, therefore, not a mandatory subject of bargaining. It did not specifically rule that the proposal was outside the scope of "wages" in section 20.9.

The Association then filed a petition for judicial review in district court of the PERB agency decision pursuant to section 17A.19, contending the PERB ruling is inconsistent with section 20.9, which includes "wages" as a mandatory subject of bargaining. The District intervened under section 17A.19(2) in support of PERB. The court reversed the PERB ruling and held that the Association's proposal was a mandatory subject of bargaining within the meaning of "wages" in section 20.9.

Both PERB and the District appealed to us under section 17A.20.

The sole issue presented by this appeal is whether the Association's proposal regarding the *nature* of graduate credit hours necessary for advancement along the salary schedule is a mandatory subject of bargaining within the term "wages" in section 20.9.

Our review of the rulings of PERB and the district court is at law, involving an issue of statutory construction. We give weight to the agency's construction of a statute, although we are not bound by such an interpretation and must make an independent determination of the meaning of the statute. *City of Fort Dodge v. Iowa PERB*, 275 N.W.2d 393, 396 (Iowa 1979); *West Des Moines Education Association v. PERB*, 266 N.W.2d 118, 124–25 (Iowa 1978). In determining whether a proposal relates to a mandatory or permissive subject of bargaining, we do not decide whether a particular contract proposal is fair or financially reasonable and leave those decisions to the parties or the arbitra-tor in the event the parties cannot reach an agreement. We look only at the subject matter and not at the relative merits of the proposal at issue. *Charles City Community School District v. PERB*, 275 N.W.2d 766, 769 (Iowa 1979).

We apply a two-step analysis in considering whether a proposal is within the scope of mandatory bargaining under section 20.9. *Charles City*, 275 N.W.2d at 773. The proposal must come within the meaning of one of the subjects listed as mandatory in section 20.9—in this case "wages." Secondly, there must be no legal prohibition against bargaining on the particular topic. Appellants do not contend that there is a legal bar to bargaining regarding this proposal. As the legality of the proposal is not disputed, our review is limited to the first criterion, whether the proposal is encompassed within the term "wages" in section 20.9.

The appellants differ as to the standard or test which they would have us apply. PERB argues for a strict application of the aforementioned two-part test, which would not involve consideration of the competing interests of the parties. The District, on the other hand, contends that we should engage in a balancing test, weighing the employee interest acknowledged in section 20.9 against the management interest of section 20.7. We have considered the relative impact of an alleged mandatory topic of bargaining on the employer rights stated in section 20.7 in determining whether a proposal was a permissive or mandatory subject of bargaining. *Charles City*, 275 N.W.2d at 774–75. We did so in analyzing the facts of that case under the first step in the aforementioned test. Such a procedure is consistent with our canon of statutory construction that we will construe a provision in the context of the entire enactment without giving undue emphasis to any part of the statute. *City of Des Moines v. PERB*, 275 N.W.2d 753, 759–60 (1979); *Doe v. Ray*, 251 N.W.2d 496, 500 (Iowa 1977). See § 4.4(2), the Code ("The entire statute is intended to be effec-

tive"); Pope, *Analysis of the Iowa Public Employment Relations Act*, 24 Drake L.Rev. 1, 33–34 (1974). In construing one section of an enactment, we must remain cognizant of the remainder of the statute and the underlying purpose of the legislation. We do not find the proposed standards inconsistent, but find the latter to be a subordinate part of the former. We will now address the merits of the parties' arguments.

The Association contends, as the district court found, that the proposal relates primarily to determining the amount of compensation which a teacher would receive and is thereby encompassed in the term "wages" in section 20.9. The Association further contends the proposal does not significantly infringe upon any of the rights reserved to the public employer by section 20.7.

PERB contends, as it held, that any proposal regarding the nature of hours of educational credit necessary for horizontal advancement along the salary schedule relates to job qualifications, a matter within management prerogative, and therefore is a permissive subject of bargaining. We agree but also find the proposal does not concern "wages" under section 20.9.

We find the following language from *Charles City* applicable here:

The issue here is not whether the employer may bargain on the proposal. The question is whether the employer is compelled to bargain on the proposal with the mediation, fact finding and arbitration steps in the background in the event of inability to agree on the proposal, or some form thereof, in a collective bargaining agreement.

275 N.W.2d at 774.

Section 20.9 makes "wages" and other specific topics mandatory subjects for negotiation between a public employer and an employee organization. It provides in relevant part:

The public employer and the employee organization shall meet at reasonable times, including meetings reasonably in advance of the public employer's budget-

making process, to negotiate in good faith with respect to wages, hours, vacations, insurance, holidays, leaves of absence, shift differentials, overtime compensation, supplemental pay, seniority, transfer procedures, job classifications, health and safety matters, evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon.

Section 20.7 on public employer rights provides in relevant part:

Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the *exclusive* power, duty, and the right to:

.      .      .      .      .

2. Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.

(Emphasis supplied.)

It must be recognized that a proponent of almost any proposal, depending on how it is drafted, could possibly point with some comfort to section 20.9 as authority for a contention that the proposal is a mandatory subject for negotiation. However, in the *Charles City*, 275 N.W.2d at 772–73, and *City of Fort Dodge*, 275 N.W.2d at 398, cases, we found legislative intent to adopt a restrictive and narrow approach to interpreting the subjects listed in section 20.9 when considering whether mandatory bargaining applied to them.

■ The public employer has the exclusive right to determine job qualifications of an employee due to its duty and right to hire, promote, demote, transfer, assign and retain employees. § 20.7. As we said in *City of Fort Dodge* :

Iowa's Employment Relations Act is unique, not only for its "laundry list" approach but also because of the broad rights reserved to employers. As Professor Pope has stated,

Section 9 [now § 20.9, The Code] must be viewed in conjunction with section 7 of the Act  .  .  .  .. [S]ection 7 [now

20.7] contains an extremely broad list of employer rights. Nearly all legitimate functions of a public employer are covered. Section 9 should properly be viewed as providing exceptions to section 7. Therefore as with most exceptions, if a subject is not specifically listed, it must be assumed that the intent of the legislature was to exclude it. *Pope, supra*, at p. 34.

He also said that:

The existence of section 7 public employer rights might be used to buttress the argument that the "shopping list" of subjects specifically identified as negotiable in section 9 of the Act is an exclusive list. . . . [S]ection 7 might be evidence of a legislative intent to narrow, by specific enumeration, the scope of negotiable subjects. *Pope, supra*, at p. 11.

275 N.W.2d at 397–98. If the word "exclusive" in section 20.7 is to have its ordinary meaning, the employer should not be compelled to bargain on a proposal that bears only on job qualifications of an employee. However, if the proposal falls within the definition of a section 20.9 mandatory subject for negotiation, it must be so bargained. *Id.* at 395.

█ We now address the Association's contention the proposal comes within "wages" under section 20.9. We do not believe it does.

We attribute to the terms listed in section 20.9 their "ordinary and commonly understood meaning." *City of Fort Dodge*, 275 N.W.2d at 396–97.

In *City of Fort Dodge* (clothing allowance not "wages") we said:

"Wages" is defined as:

Pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees.

.    .    .    .    .

Syn.—Wages, hire, salary, stipend, pay, emolument.—Wages    .    .    .    denote[s] the price paid for labor, esp. by the day or week  .    .    .    .

Webster's New International Dictionary (2d ed.) (G. & C. Merriam Co. 1952). 275 N.W.2d at 396.

█ The proposal at issue is a narrow one and involves only the specific criteria which must be met in order for an employee to be awarded credit for advancement from one educational lane to another. The proposal does not directly involve the issue of wages as it has been defined above. The term "wages" involves a specific sum or price paid by an employer in return for services rendered by an employee.

The Association attempts to tie the proposal in question, involving the *nature* of the educational hours, with its separate salary schedule proposal, and argues that without the corresponding right to set the types of courses that will qualify for horizontal advancement on the Association's proposed salary schedule, the right to set salaries for each lane is meaningless. However, once the employer decides the type of graduate credit that will qualify for advancement from one educational lane to another, these criteria no doubt will influence what the Association will propose as "wages" for the educational lanes.

An analogy also can be drawn between the disputed proposal and merit payments. In *Area. IV Community College Education and Merged Area IV School District, and Iowa Central Community College Education Association and Merged Area V School District*, PERB Cases Nos. 663 and 674, it was held that while the amount and timing of merit pay is a mandatory subject for bargaining, the evaluation for determining eligibility for merit pay is within the province of the public employer. The educational lanes on the salary schedule are based on the premise that the quality of a teacher's performance in his or her teaching assignment is improved through educational attainment. *See Barnett v. Durant Community School District*, 249 N.W.2d 626 (Iowa 1977); § 279.12, The Code. Thus, the criteria for the awarding of credit for movement from one educational lane to a higher lane is analogous to the evaluation of eligibility for merit pay.

We believe the proposal as to the *nature* of credit hours is not "wages" and relates primarily to the qualifications of an individual teacher. The determination of such qualifications is the exclusive right of the public employer due to its duty and right to hire, promote, demote, transfer, assign and retain employees. It is the province of the District to decide what education and what specific subject areas of that education would qualify a teacher for a particular teaching assignment. Correspondingly, this principle may be followed through concerning any advancement by that teacher from one educational lane to another while the teacher continues in his or her particular teaching assignment. The right to set job qualifications by the employer is not limited to setting minimum qualifications for entry into a particular position. The right continues, however, throughout the employment of any employee.

Because the District did not dispute whether the negotiability of the amount of pay or the number of hours necessary for advancement was a mandatory subject of bargaining, we make no determination on that issue.

We hold the proposal in question as to the *nature* of credit hours is a permissive subject of bargaining and not a mandatory subject. The ruling of the district court is reversed.

REVERSED.

All Justices concur except McCORMICK and UHLENHOPP, JJ., who concur specially, and REES and HARRIS, JJ., who dissent.

McCORMICK, Justice (concurring specially).

Cogent arguments have been made in support of the majority and dissenting positions in this case. I join the majority because in cases as close as this one I believe the principle of giving weight to agency construction of the statute it administers is determinative.

UHLENHOPP, J., joins this special concurrence.

REES, Justice (dissenting).

The majority position is based largely on two premises. First it concludes that the nature of the hours necessary for lateral movement on the salary schedule relates solely to the job qualifications of the individual teacher. Secondly it concludes that our commitment to narrowly construe the section 20.9 mandatory topics of bargaining necessarily leads to the conclusion that the nature of the hours of graduate study falls outside the term "wages" as used in section 20.9. As I am unable to join in these conclusions, I respectfully dissent.

The proposal clearly covers a matter integrally related to the "wages" of the educators. Position on the salary schedule is determined by experience and educational background. If the nature of the educational hours is a question solely reserved for the school board, it can effectively control lateral movement along the educational background axis of the salary scale by limiting the hours which it might find acceptable. To remove this proposal from the scope of mandatory bargaining would be to remove from the bargaining table partial control of the salary schedule which directly determines teacher remuneration or "wages". *City of Fort Dodge*, 275 N.W.2d at 398, in which we held a clothing allowance to be outside the scope of "wages" under section 20.9, is distinguishable as this proposal relates directly to the employees' *basic* rate of compensation. PERB has previously found a proposal to be mandatorily negotiable if it is "integrally related" to a topic listed in section 20.9. *North Scott Community School District,* PERB Case No. 931, p. 9 (1977); *see* Note, *The Scope of Negotiations Under the Iowa Public Employment Relations Act*, 63 Iowa L.Rev. 649, 776–77 (1978). I find this analytical framework consistent with our precedent, appropriate to the case at bar and supportive of the district court ruling.

Other jurisdictions, in facing such issues, have uniformly applied a similar standard. *E. g., Allied Chemical & Alkali Workers v.*

*Pittsburgh Plate Glass Co.*, 404 U.S. 157, 179, 92 S.Ct. 383, 397–98, 30 L.Ed.2d 341, 357–58 (1971) ("vitally affects"); *National Education Association v. Board of Education*, 212 Kan. 741, 753, 512 P.2d 426, 435 (1973); *School District of Seward Education Association v. School District*, 188 Neb. 772, 784, 199 N.W.2d 752, 759 (1972) ("directly related"); *Clark County School District v. Local Government Employee-Management Relations Board*, 90 Nev. 442, 446–47, 530 P.2d 114, 117 (1974) ("significantly related"); *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 507, 337 A.2d 262, 268 (1975); *Aberdeen Education Association v. Aberdeen Board of Education*, 88 S.D. 127, 215 N.W.2d 837, 841 (1974) ("materially affect"); *City of Beloit v. Wisconsin Employment Relations Commission*, 73 Wis.2d 43, 54, 242 N.W.2d 231, 236 (1976) ("primarily related"). I do not find such a standard repugnant to our commitment to narrowly construe the topics listed in section 20.9 unless the majority means to apply that standard to limit the mandatory bargaining of "wages" to dollar amounts without consideration of the bargaining context or the manner in which the amount is derived. Such rigidity is unduly restrictive. *See Fibreboard Paper Products Corp. v. N.L.R.B.*, 379 U.S. 203, 211, 85 S.Ct. 398, 403, 13 L.Ed.2d 233, 239 (1964) ("While not determinative, it is appropriate to look to industrial bargaining practices in appraising the propriety of including a particular subject within the scope of mandatory bargaining."). Here, under common practice, the basic wage or salary of a teacher is set by the salary schedule, which incorporates experience and educational training. The proposal at bar, as a determinative component of the schedule, is so interrelated to establishing the salaries of those in the bargaining group that bargaining should be mandated.

We have referred to step-salary increases, such as those which would take place upon completion of post-graduate credit hours or through accumulated seniority, as permissible forms of compensation. *See Bettendorf Educational Association v. Bettendorf Community School District*, 262 N.W.2d 550, 552 (Iowa 1978); *Barnett v. Durant Community School District*, 249 N.W.2d 626, 628 (Iowa 1977). Finding the subject matter of the proposal at bar to be a mandatory subject would ensure that bargaining include all significant aspects of the salary schedule which determines the "wages" of those in the bargaining unit. The ease of mobility on the schedule and the resulting wage differential should be determined through negotiation between the Association and the District, rather than by the unilateral decision of the District.

At the same time mandatory bargaining on proposals such as that of the Association would not infringe, to any significant extent, on the public employer rights set forth in section 20.7. The nature of the hours does to an extent reflect on the qualifications of any particular individual, but the proposal at bar does not determine whether an individual is qualified or adequately trained for a particular position. That decision remains for the employer. The proposal does not determine whether a person is qualified; it only establishes the salary such person is entitled to receive. The District remains free to establish job qualifications, evaluate job performance, promote employees and terminate employees when appropriate, pursuant to chapter 279. Transfers and assignments remain the province of the public employer. *See* section 20.7(2). Advancement on a salary schedule is not a promotion; no change of job or position need be involved. Increased education or experience is merely acknowledged by increased compensation. The proposal simply does not materially affect the statutory managerial rights under section 20.7.

Apparently reaching similar conclusions, the Alaska Supreme Court has held that salary schedule classifications are a proper subject for collective bargaining. *Kenai Peninsular Borough School District v. Kenai Peninsula Education Association*, 572 P.2d 416, 424 (Alaska 1977).

The subject matter of post-graduate studies pursued by employees or prospective employees is a topic which would be of some

concern to a school district as those hours of credit would hopefully improve the teaching ability of the individual. In-service training is a topic which would be of equal concern to the school district for the same reason. Yet, in-service training is a mandatory subject of bargaining under section 20.9. Some mutuality of interest is present in each bargaining topic, or else there would be no need to bargain. The proposed topic before us encompasses an essential factor in determining the salaries of the members of the bargaining unit. At the same time, the proposed topic does not infringe upon the section 20.7 public employer rights. Under the test as enunciated in our *Charles City School District* decision, I would hold the subject matter of the Association's proposal is a mandatory subject of bargaining and affirm the ruling of the district court.

HARRIS, J., joins this dissent.